UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

NEWARK VICINAGE

CHRISTOPHER PETERSON,

Plaintiff,

v.

KAITLYN GROEZINGER, et al.,

Defendants.

Civil Action No. 2:25-cv-11801-MEF-AME

Hon. Michael E. Farbiarz, U.S.D.J.

Hon. Andre M. Espinosa, U.S.M.J.

PLAINTIFF'S OPPOSITION TO DEFENDANT BEHAVED BRAIN'S MOTION TO DISMISS

(corrected legible copy)

This filing is submitted in compliance with the Court's March 2, 2026 Text Order directing Plaintiff to refile legible copies of D.E. 72 and 73.

PRELIMINARY STATEMENT

Defendant Behaved Brain's motion rests on a mischaracterization of the pleadings. Plaintiff does not seek to impose liability for speech alone, nor does he ask this Court to review or overturn a Family Court ruling. He alleges that a private mental-health provider knowingly participated in

state decision-making by providing characterizations intended to be relied upon by the Family Court to deny a joint-custody parent access to his child's medical records, and that the court expressly referenced and repeated those representations before exercising authority affecting Plaintiff's access to records.

At the pleading stage, those allegations plausibly establish joint action, constitutional injury, and causation. Dismissal—certainly with prejudice—is improper.

STANDARD OF REVIEW

On a Rule 12(b)(6) motion, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. A complaint need only state a plausible claim for relief. The Court may not resolve factual disputes, weigh evidence, or assess credibility at this stage.

ARGUMENT

I. PLAINTIFF PLAUSIBLY ALLEGES JOINT ACTION WITH STATE ACTORS

Plaintiff does not rely on a traditional conspiracy theory requiring proof of a pre-existing "meeting of the minds." Joint action under Lugar and Dennis may be established where a private actor knowingly participates in, or meaningfully influences, the exercise of state authority in a manner that results in constitutional deprivation. The state-action inquiry is functional, not formalistic, and does not require allegations of bribery, secret agreements, or pecuniary motive.

Plaintiff does not contend that a private party becomes a state actor merely by advocating before a court or prevailing in litigation. His claim is narrower: that Defendant supplied extra-record evaluative characterizations in lieu of invoking established subpoena procedures, and that those submissions were referenced during the exercise of state authority without evidentiary safeguards.

Behaved Brain argues it is a purely private actor that merely responded to judicial process. The Amended Complaint alleges more. Plaintiff alleges that after he lawfully sought access to his child's treatment records pursuant to undisputed joint legal custody and served subpoenas limited to documents, Behaved Brain—through its principal—affirmatively inserted itself into Family Court proceedings and provided characterizations of Plaintiff's conduct with the knowledge and expectation that those characterizations would be presented to the Court in advance of its exercise of authority regarding access to records. That sequence is reflected in the

Family Court's subsequent restriction of Plaintiff's access to medical records and acceptance of credibility-based characterizations supplied by Behaved Brain, despite the absence of testimony, sworn evidence, or any opportunity for Plaintiff to confront or rebut those assertions.

Behaved Brain's evaluative characterizations were supplied before any evidentiary hearing, outside any sworn testimony, and before Plaintiff had notice that such characterizations would be presented or relied upon.

Joint action exists where a private party willfully participates in state action to cause a constitutional deprivation. At Rule 12, those allegations are plausible and must be accepted as true.

Joint action does not require allegations of bribery, corruption, or an express conspiratorial agreement. A private party acts under color of law where it is a "willful participant in joint activity with the State or its agents." Dennis v. Sparks, 449 U.S. 24, 27–28 (1980). Plaintiff alleges that Behaved Brain affirmatively provided characterizations of Plaintiff's conduct with the knowledge and expectation that those characterizations would be placed before and considered by the Family Court in adjudicating access to a child's medical records, and that the court expressly referenced those characterizations during its ruling.

Plaintiff's theory does not depend on proving a pre-existing conspiratorial agreement. Joint action may be established where a private actor meaningfully influences the exercise of state authority in a manner that results in constitutional deprivation. The inquiry is functional and fact-specific, not limited to traditional conspiracy formulations requiring a formal "meeting of the minds."

The Third Circuit has likewise recognized that a private party may be deemed a state actor where it is a willful participant in joint activity with state officials or where the State has significantly relied upon the private party's input in exercising its authority. See Lugar v. Edmondson Oil Co., 457 U.S. 922, 941 (1982); Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178–79 (3d Cir. 2010). At the pleading stage, Plaintiff need only allege facts supporting a plausible inference that the private actor's conduct was intertwined with the State's exercise of power. Those allegations are present here.

This case is not one in which a private party merely "resorted to the courts and [was] on the winning side of a lawsuit." Great Western, 615 F.3d at 178 (quoting Dennis v. Sparks, 449 U.S. 24, 28 (1980)). Plaintiff does not allege liability based solely on the fact that Behaved Brain advocated a position at a hearing or prevailed in a subpoena dispute. Rather, he alleges that Behaved Brain injected unsworn, evaluative characterizations into the adjudicative process in lieu of invoking established subpoena procedures, and that those extra-procedural submissions were considered in the exercise of state authority affecting his parental rights. The alleged misconduct is not the act of prevailing in court, but

the manner in which unsworn evaluative submissions were placed before the Court outside ordinary evidentiary safeguards and expressly referenced during the exercise of state authority.

Unlike cases in which a private litigant simply advocates a position before a judge, Plaintiff alleges that Behaved Brain's evaluative characterizations were supplied before any evidentiary hearing, outside sworn testimony, and without invocation of formal subpoena procedures. The Family Court's exercise of authority occurred after those characterizations were placed before it without the procedural safeguards ordinarily accompanying testimonial evidence. At the pleading stage, that sequence plausibly supports an inference that the private conduct was intertwined with the State's exercise of power rather than merely parallel to it.

The transcript of the February 9, 2024 Order to Show Cause hearing illustrates the sequencing alleged. Counsel for Behaved Brain asserted that staff were fearful for their safety based on Plaintiff's demeanor and facial expressions. Immediately before quashing the subpoena, the Court expressly referenced those concerns, stating that individuals were "concerned for their life, health, and safety based on his facial expressions and depth of inquiry." (Feb. 9, 2024 Tr. at 22). At the pleading stage, that sequencing plausibly supports an inference that the private representations were intertwined with the exercise of state authority. The Court need not determine actual reliance; it need only assess plausibility.

Behaved Brain did not merely respond to a subpoena or provide neutral factual information. It affirmatively offered evaluative characterizations of Plaintiff's demeanor and conduct unrelated to the scope of the document subpoenas, and did so in a procedural posture where Plaintiff had no opportunity to confront, cross-examine, or rebut those characterizations. By injecting evaluative characterizations outside sworn testimony and without invocation of formal subpoena procedures, Behaved Brain plausibly placed unsworn factual assertions before the Court in advance of evidentiary safeguards.

Whether Plaintiff's initial visit to the facility was appropriate or whether staff subjectively felt discomfort is not before this Court. The issue at Rule 12 is whether Behaved Brain elected to inject evaluative characterizations into the adjudicative process in lieu of invoking established subpoena procedures, thereby plausibly participating in the exercise of state authority without procedural safeguards.

Responding to legal process does not authorize a private party to exceed the scope of a document subpoena by supplying unsolicited behavioral assessments or credibility judgments designed to influence the court's exercise of state power. Once Behaved Brain chose to inject evaluative characterizations outside the subpoena's scope, knowing they would be presented to the Court in advance of its ruling affecting a parent's rights, it plausibly ceased acting as a neutral record custodian and instead participated in the sequence of events preceding the Court's exercise of state authority.

When a nonparty disputes a subpoena, the procedural safeguard is a motion to quash — which triggers notice, briefing, and an evidentiary framework. Behaved Brain chose not to do that. Instead, it injected advocacy directly into a custody proceeding, supplying extra-record characterizations without procedural protections.

The plausibility of willful participation is further reinforced by Defendant's invocation of state law enforcement immediately following service of the subpoenas. Within hours of lawful service, Defendant's principal filed police reports and arranged for off-duty officers to provide security at the office, asserting that Plaintiff had refused to leave and acted in a manner causing safety concerns. However, after reviewing audio recordings of the interactions, a supervising Ho-Ho-Kus Police officer documented that Plaintiff "did not seem aggressive or argumentative" and that no charges were warranted. (Ho-Ho-Kus Police Report, Case No. 24-01774, at 2). At the pleading stage, these allegations plausibly support the inference that Defendant elected to invoke state mechanisms and construct a safety narrative outside formal subpoena procedures, which was subsequently echoed in court immediately prior to the exercise of state authority.

Extra-Procedural Conduct Reinforces the Plausibility of Joint Action.

The alleged threats occurred outside any judicial proceeding and prior to any evidentiary hearing, further underscoring that Behaved Brain acted outside the protections ordinarily afforded to litigation advocacy. These allegations are pled not as evidence, but to show that Behaved Brain elected informal advocacy and coercive leverage in lieu of the court-supervised subpoena procedures required by due process. The plausibility of joint action is further reinforced by conduct occurring outside the courtroom and prior to any evidentiary hearing. Plaintiff alleges, based on a contemporaneous certification from his family-law counsel that, during a three-way call, counsel for Behaved Brain stated that if Plaintiff continued pursuing his son's medical records, Behaved Brain would have "every person write affidavits" falsely asserting that Plaintiff was intimidating or had conducted himself inappropriately.

Plaintiff further alleges that, after the Family Court reviewed recordings of his interactions with Behaved Brain personnel, the asserted basis for nondisclosure shifted from allegations of intimidation to subjective observations about Plaintiff's demeanor, including references to facial expressions. Plaintiff offers this not to relitigate factual disputes, but to demonstrate that the characterizations at issue were subjective and evaluative in nature, and that their injection into the adjudicative process without sworn testimony or evidentiary safeguards plausibly altered the procedural framework under which his parental rights were adjudicated.

Plaintiff does not offer this certification for the truth of any disputed factual characterization, nor does he ask this Court to resolve credibility. It is pled solely to demonstrate intent and method: that Behaved Brain sought to deter lawful subpoena enforcement through threatened fabrication of sworn statements rather than through neutral, court-supervised procedures.

Plaintiff alleges that Behaved Brain did not respond to the document subpoenas served upon it, did not file a motion to quash, and did not seek protective relief. Instead, Behaved Brain

appeared in Family Court and affirmatively argued nondisclosure, offering evaluative characterizations beyond the scope of the subpoenas. By bypassing the procedures designed to ensure notice, briefing, and evidentiary fairness, and substituting informal advocacy and threatened affidavit fabrication, Behaved Brain plausibly participated in the sequence of events preceding the Court's exercise of state authority.

This opposition is submitted under Rule 12(b)(6). Plaintiff does not submit evidentiary materials and relies solely on well-pleaded allegations, which must be accepted as true at this stage. References to certifications, recordings, or counsel's review are pled solely to establish plausibility, intent, and procedural posture, not for the truth of disputed facts.

At the pleading stage, these allegations must be accepted as true and are sufficient to support an inference of joint action and intentional deprivation of procedural due process.

Importantly, Behaved Brain did not challenge the subpoenas through any of the procedural mechanisms designed to safeguard fairness, such as a motion to quash or a request for protective relief. Instead, without filing any such motion, Behaved Brain appeared in Family Court and affirmatively argued for non-disclosure, asserting that compliance would jeopardize the child's medical privacy and offering evaluative characterizations beyond the scope of the document subpoenas. By bypassing formal subpoena procedures—which would have required notice, briefing, and an evidentiary framework—and instead advocating directly for denial of parental access, Behaved Brain substituted unilateral advocacy for neutral process. That choice plausibly supports the inference that Behaved Brain was not acting as a passive recipient of judicial process, but as a willful participant in the exercise of state authority affecting Plaintiff's parental rights.

The plausibility of Plaintiff's allegations is further reinforced by events that occurred immediately thereafter.

Plaintiff further alleges that counsel indicated affidavits would be generated characterizing Plaintiff's conduct if he continued pursuing subpoena enforcement. These allegations are pled not for the truth of any factual dispute, but to demonstrate intent and method: that Behaved Brain elected informal advocacy and coercive leverage in lieu of court-supervised subpoena procedures. At this stage, those allegations must be accepted as true and support a plausible inference of willful participation in the exercise of state authority.

At this stage, Plaintiff need not prove joint action or actual reliance; he need only allege facts supporting a plausible inference that Behaved Brain's conduct was intertwined with the State's exercise of authority and altered the procedural framework under which his parental rights were adjudicated. Those allegations are sufficient under Rule 12(b)(6).

## II. PLAINTIFF ALLEGES A CONSTITUTIONAL INJURY INDEPENDENT OF THE FAMILY COURT ORDER

To streamline the issues before the Court and focus on the constitutional questions presented, Plaintiff voluntarily withdraws his malicious abuse of process claim (Count III) as against Behaved Brain. Plaintiff maintains that the allegations underlying that claim remain relevant to the NJCRA analysis insofar as they inform the joint-action inquiry, but he does not seek adjudication of a standalone abuse of process cause of action against this defendant.

A procedural due-process claim requires (1) a protected liberty or property interest, (2) deprivation of that interest by state action, and (3) the absence of constitutionally adequate process. The adequacy of such process is evaluated under Mathews v. Eldridge, 424 U.S. 319 (1976), which balances the private interest affected, the risk of erroneous deprivation, and the governmental burden of additional safeguards.

Plaintiff alleges all three. As a joint legal custodian, he possessed a protected liberty interest in access to his child's medical information and participation in medical decision-making. That interest was restricted through state action. And the restriction occurred after consideration of unsworn, extra-record characterizations supplied outside the evidentiary framework ordinarily required by due process.

Behaved Brain frames Plaintiff's injury as the Family Court's ruling, invoking jurisdictional doctrines. That framing fails. Plaintiff does not challenge the correctness of the subpoena ruling itself. He challenges the private conduct that preceded and produced it—namely, the knowing provision of unsworn evaluative characterizations outside the evidentiary process intended to influence the exercise of state authority.

Plaintiff does not ask this Court to second-guess any custody determination, weigh best-interest factors, or substitute its judgment for that of the Family Court.

Plaintiff does not seek reversal of the Family Court's subpoena ruling, production of records through this Court, or modification of any state-court order. He seeks damages for the constitutional deprivation arising from the manner in which state authority was allegedly influenced and exercised.

The alleged injury is the deprivation of a joint-custody parent's access to his child's medical information and participation in medical decision-making, without notice or a meaningful opportunity to be heard. Plaintiff was not informed that these characterizations would be presented, nor that they would be relied upon in lieu of sworn testimony or documentary evidence.

The constitutional injury occurred when state authority was exercised after extra-record characterizations were placed before the Court outside ordinary subpoena procedures and without notice, sworn testimony, or an opportunity for confrontation. The deprivation alleged is procedural contamination of the adjudicative process, not disagreement with the ultimate ruling.

That injury is independent of the existence of the order and is actionable. That deprivation occurred without advance notice, without disclosure of the adverse characterizations being considered, and without any meaningful opportunity to challenge, rebut, or cross-examine the source of those assertions before state authority was exercised.

Critically, Plaintiff's claims would exist even if the Family Court had reached the same result through lawful means. The injury alleged is not the issuance of an adverse order, but the deprivation of procedural due process allegedly arising from a private actor's knowing submission of evaluative characterizations in advance of the Court's exercise of authority. That constitutional injury is complete once state authority is exercised after such characterizations are placed before the Court outside ordinary procedural safeguards.

The constitutional injury alleged is the denial of a fair process for asserting joint-custody medical rights — a process that was altered when the court considered extra-record characterizations supplied by a private actor acting outside any evidentiary framework.

## III. LITIGATION PRIVILEGE DOES NOT BAR PLAINTIFF'S CLAIMS AT THE PLEADING STAGE

The litigation privilege protects participants from tort liability for statements made in connection with judicial proceedings. It does not immunize a private actor from liability where the gravamen of the claim is misuse of state authority. Section 1983 and the NJCRA impose liability not for speech as speech, but for constitutional deprivations effectuated under color of law. A state-law privilege cannot nullify a federally protected constitutional right.

Behaved Brain overstates the scope of litigation privilege. Plaintiff does not seek liability for defamation or for speech as speech. He seeks redress for constitutional deprivations effectuated through the use of state authority, with speech alleged as the vehicle rather than the injury. Litigation privilege does not immunize private actors from claims where the gravamen is a constitutional deprivation accomplished through joint action with the state. At minimum, the applicability and scope of the privilege depend on factual context not resolvable at the pleading stage.

State-law litigation privilege cannot override federal constitutional claims brought under §1983. Under the Supremacy Clause, state common-law immunity doctrines cannot displace federally protected rights. See Howlett v. Rose, 496 U.S. 356, 376 (1990). Because Plaintiff's claim challenges misuse of state authority rather than defamatory content, litigation privilege does not bar the action at the pleading stage. Moreover, Plaintiff's

allegations are not confined to statements made during a formal hearing. He alleges extra-procedural conduct and threatened affidavit fabrication occurring outside evidentiary proceedings and prior to judicial review. To the extent such conduct preceded or operated outside formal adjudication, it falls beyond the core purpose of the litigation privilege, which is to protect advocacy within judicial proceedings—not to immunize conduct that plausibly alters the procedural framework through which state authority is exercised.

Because §1983 targets misuse of state authority rather than defamatory content, litigation privilege cannot shield a private actor who allegedly caused the state to act through materially adverse characterizations presented outside the evidentiary process or through extra-procedural submissions.

## IV. ROOKER–FELDMAN DOES NOT APPLY

Plaintiff is not a state-court loser complaining of injuries caused by a state-court judgment. He does not ask this Court to review or reverse a Family Court decision. He alleges injuries caused by a private defendant's conduct that preceded and influenced the court's exercise of authority. Jurisdiction therefore lies.

The source of Plaintiff's injury is not the state-court judgment itself, but the private defendant's alleged extra-record conduct that preceded and influenced the court's exercise of authority. The injury was complete when state power was exercised after unsworn and extra-procedural characterizations were presented to the Court prior to its ruling.

Plaintiff does not seek review or rejection of the Family Court's order, but redress for independent constitutional misconduct. The federal claim would exist even if the state court reached the same ultimate conclusion through constitutionally adequate procedures. The injury alleged is not the adverse ruling itself, but the alleged deprivation of procedural safeguards preceding the exercise of state authority. Because the source of the injury is independent alleged misconduct rather than the validity of the state judgment, the Rooker-Feldman doctrine does not apply.

Plaintiff's claim would exist even if the Family Court ultimately reached the same conclusion through constitutionally adequate procedures. Federal jurisdiction is not barred merely because constitutional injuries arise in the context of family-court proceedings; private actors remain liable when they knowingly cause the State to depart from constitutionally required process.

## V. DISMISSAL WITH PREJUDICE WOULD BE IMPROPER

Even if the Court were to conclude that additional factual specificity is required as to Behaved Brain, dismissal with prejudice is unwarranted. Any pleading deficiency would be curable by amendment. Plaintiff respectfully requests that any dismissal be without prejudice and with leave to amend.

At this stage, Plaintiff need not prove joint action or constitutional deprivation; he need only plausibly allege it, and factual disputes concerning reliance, intent, and causation must be resolved after discovery.

## CONCLUSION

For the foregoing reasons, the Court should deny Behaved Brain's motion to dismiss. In the alternative, any dismissal should be without prejudice and with leave to amend.

Respectfully submitted,

Christopher Peterson, Plaintiff Pro Se
Email: christopherpeterson847@gmail.com
Service Address: c/o Jared Geist, Esq.
25 Main Street, Suite 202
Hackensack, New Jersey 07601
Dated: March 3, 2026

CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2026, I electronically filed the foregoing Plaintiff's Opposition to Defendant Behaved Brain's Motion to Dismiss with the Clerk of the Court using the CM/ECF system. I understand that notice of this filing will be sent automatically to all counsel of record who are registered CM/ECF users.

Christopher Peterson, Plaintiff Pro Se
Email: christopherpeterson847@gmail.com
Service Address: c/o Jared Geist, Esq.
25 Main Street, Suite 202
Hackensack, New Jersey 07601
Dated: March 3, 2026