UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

CHRISTOPHER PETERSON,

Plaintiff,

v.

KAITLYN GROEZINGER, et al.,

Defendants.

Civil Action No. 2:25-cv-11801 (MEF-AME)

## PLAINTIFF'S OPPOSITION TO THE STATE DEFENDANTS' MOTION TO DISMISS

(Corrected, Legible Copy)

This filing is submitted in compliance with the Court's March 2, 2026 Text Order directing Plaintiff to refile legible copies of D.E. 72 and 73.

## PRELIMINARY STATEMENT

This action is not an appeal of family court rulings, nor an attempt to enlist this Court to supervise custody proceedings. Plaintiff challenges extra-judicial conduct by state actors that operated outside the adversarial process and materially affected judicial proceedings without notice, disclosure, or procedural safeguards.

State Defendants' Motion to Dismiss rests on the premise that all alleged conduct occurred within protected adjudication, a premise that is not supported by the pleadings. That premise collapses once the Court accepts, as it must at this stage, Plaintiff's well-pleaded allegations that judicial decisions were influenced by undisclosed security communications and administrative practices outside the record. The Motion repeatedly asks the Court to assume facts in Defendants' favor, to resolve disputed factual questions, and to extend immunity

Page 1 of 15

doctrines beyond their lawful scope. Rule 12 does not permit that. Where liability turns on what communications occurred, what information was relied upon, and how security classifications were used, discovery is required.

Plaintiff does not ask this Court to review, reverse, or invalidate any state-court judgment, but to address independent constitutional violations arising from extra-record administrative conduct.

The conduct challenged here does not arise in isolation. As alleged elsewhere in this action, private actors and judicial security personnel operated within an administrative environment in which extra-record characterizations and security-based narratives were transmitted outside the adversarial process and later surfaced in adjudicative settings. The claims against State Defendants address the policy-level and administrative structures that permitted such extra-record inputs to influence proceedings, while the claims against private actors address participation within that same framework. Together, these allegations describe a single course of constitutional injury arising from extra-record administrative influence rather than from judicial decision-making itself.

Defendants' motion rests primarily on the Rooker–Feldman doctrine and judicial immunity. Both arguments mischaracterize Plaintiff's claims. Plaintiff does not seek appellate review of any state court judgment. Rather, Plaintiff challenges ongoing unconstitutional policies, practices, and actions undertaken under color of state law that continue to deprive him of constitutional rights. Binding Third Circuit precedent confirms that such claims fall squarely within federal jurisdiction.

For those reasons, the Motion should be denied.


## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleadings, not the truth of the allegations or the ultimate merits. The Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Immunity defenses may justify dismissal only where entitlement to immunity is apparent from the face of the complaint. Where immunity turns on disputed facts, intent, or the nature of the defendant's conduct, dismissal at the pleading stage is improper. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

At the pleading stage, the Court's task is to determine plausibility, not to weigh competing explanations or resolve disputed factual inferences.

## PROCEDURAL HISTORY OF RELATED STATE APPEAL

The following procedural history is provided solely to clarify jurisdictional posture and to address abstention and preclusion arguments raised by Defendants.

Plaintiff filed a timely appeal to the Superior Court of New Jersey, Appellate Division, docketed as A-000629-20, arising from proceedings in the Bergen County Superior Court.

The appeal was never resolved on the merits. Instead, it was dismissed on procedural grounds related solely to transcript processing and record-completion issues.

On January 5, 2021, the Appellate Division entered a court-initiated order dismissing the appeal due to deficiencies in the appellate record, specifically the absence of required transcripts. Plaintiff thereafter moved to vacate the dismissal and reinstate the appeal.

By order dated October 5, 2021, the Appellate Division granted reinstatement, conditioned upon submission of designated transcripts and required paper copies.

Despite continued efforts by Plaintiff and appellate counsel, including multiple transcript requests and submissions reflected on the appellate docket, the Clerk's Office continued to report that the appellate record remained incomplete. As a result, the appeal was again dismissed by order dated August 3, 2022.

Plaintiff subsequently filed a second motion to vacate dismissal and reinstate the appeal. By Order on Motion dated February 9, 2023, the Appellate Division denied reinstatement, stating that the Clerk's Office had not received the required copies of all necessary transcripts. The order expressly noted that the denial was procedural and did not address the merits of the appeal.

At no time did the Appellate Division issue any decision reviewing or adjudicating the substantive claims raised on appeal, including constitutional claims concerning due process, neutrality of the tribunal, or extra-record influences on adjudication. The appeal terminated solely on procedural grounds without appellate consideration of the merits.

Because the related state appeal was terminated solely on procedural grounds and never resulted in any merits determination, this Court is not asked to review or disturb any state-court judgment, but rather to address independent constitutional violations arising from extra-judicial and administrative conduct beyond the appellate record.

The appeal sought review of documentary record evidence directly contradicting material factual findings, but no appellate court ever reviewed that evidence because the appeal was terminated on procedural grounds unrelated to the merits.

## FACTUAL CONTEXT RELEVANT TO NON-ADJUDICATIVE CONDUCT

Plaintiff provides the following factual context solely to illustrate the procedural environment in which the alleged extra-record security classifications and administrative practices operated. Plaintiff does not ask this Court to revisit or overturn any state-court rulings.

During the Final Restraining Order ("FRO") proceedings before Judge McGrogan, conflicting testimony was presented concerning alleged incidents between the parties. Plaintiff introduced contemporaneous audio recordings and documentary evidence that he contends materially differed from certain testimonial accounts. The court made credibility determinations and issued a final restraining order.

Plaintiff does not challenge the court's authority to make credibility findings. However, Plaintiff alleges that subsequent courtroom treatment and characterizations of him were not limited to findings made on the evidentiary record, but were influenced by non-record security-based narratives that were never disclosed to him.

Following entry of the FRO, related criminal proceedings were initiated. Plaintiff filed a motion to dismiss challenging the constitutionality of the charged statute. Plaintiff expressly declined to withdraw that motion. The docket later reflected the motion as withdrawn without written withdrawal, adjudication, or notice. Plaintiff alleges this constituted administrative nullification of a pending dispositive motion rather than a judicial ruling on the merits.

The transcript reflects that Plaintiff expressly declined to withdraw his motion. The docket subsequently reflected the motion as "withdrawn," despite no written withdrawal or ruling on the record. After Plaintiff raised the discrepancy, the docket status changed again, and the motion remains pending without adjudication. These irregularities present a factual question as to whether the disposition resulted from adjudicative action or administrative docket handling.

During the pendency of those proceedings, Plaintiff was subjected to sustained heightened courtroom security measures, including plain-clothes monitoring and armed presence. No incident report, formal designation, or on-record finding supported any security classification. Plaintiff was never notified of any designation, nor provided an opportunity to contest it. These measures were not applied to other similarly situated criminal defendants appearing in the same courthouse during the same time period and were not accompanied by any on-the-record finding of risk.

In parallel family-court proceedings, Plaintiff alleges that restrictions were imposed affecting his ability to record custody exchanges, access his child's medical information despite joint legal custody, and participate in proceedings in person despite withdrawing consent to remote appearances. Plaintiff formally requested ADA accommodation for in-person participation due to ADHD; no interactive process occurred and no determination was issued.

Plaintiff further alleges that communications from Judicial Security personnel included directives that litigants be "handled accordingly," demonstrating an administrative practice of transmitting

non-public information to judges outside the evidentiary record. Plaintiff alleges that his own treatment in court corresponded temporally with such undisclosed security communications. Such directives were not placed on the docket, disclosed in open court, or subjected to adversarial testing.

Plaintiff does not assert that adverse rulings alone establish constitutional violations. Rather, Plaintiff alleges that undisclosed extra-record security classifications and administrative handling of filings materially affected the process without notice, disclosure, or opportunity to respond.

## ARGUMENT

### I. Judicial immunity does not bar claims based on non-judicial and extra-judicial conduct

State Defendants contend that all claims against Judges Antoniewicz, McGrogan, and Wilcox are barred by absolute judicial immunity because the challenged acts occurred while presiding over proceedings. That argument misstates the inquiry. Plaintiff does not allege that any judicial defendant is liable for the substance of rulings, findings, or discretionary judicial decisions, but only for non-adjudicative conduct, including administrative handling of filings and reliance on undisclosed extra-record security information.

Plaintiff seeks relief solely for administrative and non-adjudicative conduct that operated outside the adversarial process. Plaintiff challenges the integrity of the adjudicative process itself, not the correctness of any particular judicial decision. Judicial immunity protects judicial acts, not all acts performed by judges. The critical distinction is between adjudicative functions—such as ruling on evidence, assessing credibility, and entering orders—and administrative or security-based coordination occurring outside the record and outside the adversarial process. The analysis turns on the nature of the conduct, not the identity of the actor. Forrester v. White, 484 U.S. 219, 227–29 (1988). Administrative actions, security coordination, and reliance on information outside the record are not adjudicative functions merely because they occur in a courtroom context.

Plaintiff clarifies that he does not seek monetary damages from any judicial defendant in either their individual or official capacities. Claims against judicial defendants are limited solely to prospective declaratory and injunctive relief.

The Third Circuit has expressly recognized that neither absolute judicial immunity nor Eleventh Amendment sovereign immunity bars claims for prospective declaratory relief. Larsen v. Senate of the Commonwealth, 152 F.3d 240, 249 (3d Cir. 1998).

The relief sought does not require reviewing past rulings but only prohibits future reliance on undisclosed extra-record security communications.

Plaintiff alleges that Judges Antoniewicz and McGrogan engaged in non-adjudicative conduct by participating in or relying upon undisclosed security communications and administrative classifications conveyed outside the evidentiary record and outside the adversarial process. Plaintiff alleges that such communications were not introduced in court, not disclosed to the parties, and were used to manage proceedings and treatment of Plaintiff rather than to adjudicate legal issues. Such conduct, if proven, constitutes administrative or security coordination rather than judicial decision-making and is not protected by absolute judicial immunity. Plaintiff's allegations concerning Judge Antoniewicz are limited to administrative reliance on undisclosed extra-record security information, and do not challenge any discretionary adjudicative rulings.

On July 30, 2024, Defendant Morante instructed court staff, directing that the communication be shared with, Judge Antoniewicz, and to ensure that a Plaintiff was "handled accordingly". Shortly thereafter, that Plaintiff experienced heightened security measures, differential courtroom treatment, and non-evidentiary characterizations unrelated to any record evidence. These actions reflect administrative handling of Plaintiff as a security concern rather than neutral adjudication of legal issues.

Plaintiff does not allege that the July 30, 2024 email authored by Defendant Morante concerned him personally. Rather, that communication demonstrates the existence of an administrative practice whereby Judicial Security transmits non-public materials to court staff with instructions that such materials be shared with judges so that litigants may be "handled accordingly." The relevance of that communication is not its subject, but its confirmation that administrative security communications are, as a matter of practice, conveyed to judges outside the evidentiary record and outside the adversarial process. Plaintiff alleges that his own proceedings were affected by undisclosed extra-record security inputs; whether such communications occurred, what they contained, and how they were used are factual questions uniquely within Defendants' knowledge and cannot be resolved at the pleading stage.

With respect to Judge Antoniewicz, Plaintiff's allegations are limited to administrative reliance on undisclosed security-related information conveyed outside the record. Plaintiff does not challenge any discretionary adjudicative ruling by Judge Antoniewicz, but alleges that non-public security communications influenced courtroom handling and treatment of Plaintiff without disclosure, notice, or opportunity to respond. Such conduct, if proven, constitutes administrative or security coordination rather than adjudication and falls outside the scope of absolute judicial immunity.

Plaintiff alleges that the characterization of him as threatening was not based on any evidence introduced in the adversarial record and occurred contemporaneously with heightened security measures and undisclosed security communications.

Instead, this characterization occurred contemporaneously with heightened

security treatment and after undisclosed communications from Judicial Security personnel concerning Plaintiff's "handling." This conduct was administrative and security-driven, not adjudicative, and occurred outside the adversarial process.

Plaintiff acknowledges that conduct consisting solely of on-the-record rulings and in-court adjudication is protected by absolute judicial immunity. Plaintiff's claims are not based on dissatisfaction with judicial outcomes, but on administrative and extra-record actions that fall outside that protected sphere.
Plaintiff does not allege error in legal reasoning or dissatisfaction with outcomes. He alleges that the adjudicative process was tainted by undisclosed, extra-record inputs external to the adversarial proceeding, including security warnings, ex parte communications, and reliance on sealed or expunged material.

Courts have repeatedly recognized that undisclosed, extra-record influences on adjudication implicate due process and cannot be resolved at the pleading stage.

Prior to the March 14, 2025 hearing before Judge Antoniewicz, Plaintiff expressly withdrew consent to appear via Zoom and advised the court that he would appear in person. Plaintiff did, in fact, appear in person for that hearing before Judge Antoniewicz, which proceeded without any incident or disruption.

For the subsequent hearing before Judge Antoniewicz, the court nevertheless scheduled the matter to proceed via Zoom. Prior to the hearing date, Plaintiff and his counsel communicated with court staff that Plaintiff had withdrawn consent to remote proceedings and would be appearing in person.

On the date of that hearing, Plaintiff and his attorney arrived at the courthouse to appear in person as noticed. Upon arrival, they were denied entry into the courtroom. Judge Antoniewicz did not permit Plaintiff or counsel to enter the courtroom and required Plaintiff to appear via Zoom from the courthouse hallway.

That same day, Plaintiff submitted a formal request for reasonable accommodation under the Americans with Disabilities Act (ADA), advising the court that due to ADHD he requires in-person proceedings in order to meaningfully participate, remain focused, and fully comprehend

the proceedings. Plaintiff specifically requested in-person appearance as a reasonable accommodation.

To date, the Bergen County court has never responded to, ruled on, or acknowledged Plaintiff's ADA accommodation request. No interactive process occurred, no determination was issued, and no alternative accommodation was proposed. Title II of the Americans with Disabilities Act prohibits public entities from denying a qualified individual with a disability meaningful access to judicial proceedings. See Tennessee v. Lane, 541 U.S. 509 (2004).

These allegations, if proven, implicate due process and the right to a neutral tribunal.

See, e.g., In Re Kensington International Ltd. 368 F.3d 289, 309–10 (3d Cir. 2004) (due process violated where undisclosed, extra-record influences affect adjudication).

Whether such communications occurred, what they contained, and how they were used are factual questions. They cannot be resolved by assuming, as Defendants ask the Court to do, that all relevant information came from the record. At the pleading stage, Plaintiff is entitled to discovery on those issues.

Plaintiff further alleges that, prior to the issuance of a superseding indictment, he filed a motion to dismiss challenging the constitutionality of the charged statute under binding New Jersey precedent. The motion was fully briefed and pending. When the court inquired whether Plaintiff would consent to withdrawing the motion, Plaintiff expressly refused and stated on the record that he did not consent and that the motion should be heard. Plaintiff never withdrew the motion, either orally or in writing. Plaintiff alleges that the designation of the motion as "withdrawn" occurred through administrative docket handling rather than judicial adjudication, and without notice or opportunity to be heard. Plaintiff does not allege that Judge Wilcox ruled on or denied the motion, but that it was nullified through non-adjudicative docket management.

Plaintiff alleges that the removal of a pending dispositive motion asserting constitutional defects—without consent, notice, or adjudication—constituted administrative or extra-judicial handling of a litigant's filing, rather than a judicial act entitled to absolute immunity. Whether and how a constitutional motion was nullified without a hearing presents factual questions that cannot be resolved on a motion to dismiss. The docket reflects no written withdrawal by Plaintiff, no order adjudicating the motion, and no hearing addressing the constitutional arguments raised therein.

The nullification of a pending constitutional motion without consent or adjudication deprived Plaintiff of meaningful access to the courts and the opportunity to be heard on a dispositive legal issue.

Plaintiff's allegation is supported by sustained security measures, differential courtroom treatment, and the presence of security personnel not explained on the record, which are consistent with the use of extra-record security information including administrative communications from Judicial Security to court staff concerning the handling of Plaintiff.

Plaintiff does not allege error in evidentiary weighing or legal reasoning. Rather, Plaintiff alleges that the decision relied on a narrative supplied outside the record and outside the adversarial process.


II. Quasi-judicial immunity does not resolve claims based on policy-level and administrative conduct

Defendants Blee and Tang invoke quasi-judicial immunity, arguing that they are insulated from liability for actions taken in their administrative roles. Plaintiff does not allege mere failure to supervise or disagreement with court administration. He alleges that policy-level practices and administrative functions allowed undisclosed security information and extra-record considerations to influence adjudication. Defendants Blee and Tang are not sued for adjudicative acts in individual cases, but for policy-level and administrative practices governing judicial operations statewide.

Quasi-judicial immunity applies only where officials perform functions integral to adjudication. It does not categorically shield policy formulation, administrative coordination, or the maintenance of practices that affect litigants' rights outside the record. Whether Defendants acted within a protected function or engaged in administrative conduct that deprived Plaintiff of due process is a factual inquiry that cannot be resolved on a motion to dismiss.

Defendants also argue that Plaintiff fails to allege personal involvement. That assertion is contradicted by the pleadings. The Amended Complaint alleges that Defendants Blee and Tang were responsible for policy-level practices governing judicial administration and family-court operations, including practices that permitted undisclosed security information, sealed material, and extra-record considerations to influence adjudication.

Plaintiff further alleges that these Defendants acted with knowledge of, acquiescence in, and authority over the practices challenged, and that such practices foreseeably and actually deprived litigants of notice, neutrality, and a fair hearing. At the pleading stage, allegations that supervisory and policy-making officials created, maintained, or knowingly allowed unconstitutional practices are sufficient to establish personal involvement. Whether Defendants in fact exercised that authority in the manner alleged is a factual question inappropriate for resolution on a motion to dismiss.

III. Qualified immunity does not bar claims against Robin Morante at the pleading stage

Plaintiff does not dispute that the State has a compelling interest in protecting judges and court personnel from genuine threats.
What Plaintiff challenges is the misuse of undisclosed security classifications to stigmatize lawful litigants, influence judicial proceedings, and alter courtroom treatment without notice, evidence, or an opportunity to be heard.

Security measures may serve legitimate safety interests; they may not be used to influence adjudication through undisclosed extra-record inputs.

Defendant Morante argues that Plaintiff has no clearly established right not to be placed on a "problem litigant list." That framing mischaracterizes the claims. Defendant Morante's conduct, as alleged, was administrative and security-based, occurred outside the

adversarial process, and is not protected by judicial or quasi-judicial immunity as a matter of law.

Plaintiff does not assert a freestanding right to avoid classification. He alleges deprivation of clearly established constitutional rights: the right to an impartial tribunal, the right to notice and an opportunity to be heard when adverse information is used, and the right to be free from undisclosed ex parte influence on judicial decision-making.

Federal courts have long recognized that undisclosed communications affecting adjudication violate due process. Whether Defendant Morante created, maintained, or disseminated threat classifications; whether such classifications were communicated to judges; and whether they influenced proceedings are factual matters. See Mathews v. Eldridge, 424 U.S. 319 (1976); Paul v. Davis, 424 U.S. 693 (1976). Procedural due process requires notice and an opportunity to be heard before the government relies on stigmatizing or adverse information in a manner that carries tangible consequences.

Plaintiff's allegations concerning Defendant Morante are reinforced by her official position. Defendant Morante serves as the Chief of Judicial and Court Security for the State of New Jersey. That role is administrative and security-based in nature, not adjudicative. By design, it operates outside the formal adversarial process and outside the evidentiary record of individual cases.

Plaintiff further alleges that, for approximately a year and a half, he was subjected to heightened courtroom security, including the presence of a plain-clothes security detail and armed officers, and was treated as a security risk during his criminal proceedings based on an alleged "threat" attributed to the prosecutor. Plaintiff denies ever making any threat, and no criminal charge, incident report, officer statement, or contemporaneous documentation exists supporting such an allegation.

Based on the sustained and individualized nature of these measures, Plaintiff alleges on information and belief that Defendants either designated him as a security concern or caused him to be treated as such through internal, non-public, or informal mechanisms. At no point during this extended period was Plaintiff notified of any such designation or security determination, informed of its basis, or afforded any opportunity to contest or challenge it.

Plaintiff further alleges that he was never notified that he had been designated as a security concern or placed on any list, classification, or internal designation of that kind. He was never informed of the basis for any such designation, never provided with any reason for it, and never afforded an opportunity to dispute, challenge, or seek review of the purported justification. Plaintiff alleges that no legitimate basis existed for such a designation, and that the complete absence of notice, explanation, or process deprived him of fundamental procedural due process protections.

Plaintiff further alleges that he has never expressed any threat, violent intent, or ill will toward any judge, prosecutor, or court personnel, nor engaged in rhetoric or conduct that

could reasonably be construed as alarming or dangerous. To the contrary, Plaintiff has repeatedly expressed respect for judges and prosecutors who perform their duties with integrity and in accordance with the law, and his advocacy has consisted solely of lawful participation in court proceedings and the assertion of constitutional rights. Plaintiff alleges that no statements, writings, or actions exist that would justify treating him as a security risk. The absence of any behavioral predicate for such treatment reinforces Plaintiff's allegation that any security designation or classification lacked a legitimate factual basis and was imposed without notice, explanation, or an opportunity to be heard.

The plausibility of Plaintiff's allegations is further supported by the contemporaneous criminal-court record. During a hearing, the presence of a prosecutor security detail was discussed on the record, with reference to an alleged threat attributed to Plaintiff, which Plaintiff denied. No incident report, charge, or evidentiary finding accompanied that assertion. This exchange illustrates that security-based characterizations affecting courtroom treatment existed outside formal adjudicative findings, reinforcing Plaintiff's allegation that undisclosed security narratives influenced proceedings without notice or an opportunity to respond.

Courts have long recognized that the government may not impose stigmatizing security classifications with real-world consequences without notice or an opportunity to be heard.

Defendants' motion does not address whether such internal classifications exist or whether Plaintiff was subject to one.

The prolonged imposition of a stigmatizing governmental classification—whether formal or informal—that resulted in targeted security measures, including plain-clothes monitoring, without notice or procedural safeguards, implicates procedural due process protections under the Fourteenth Amendment. The subsequent dismissal of the charges does not cure the absence of constitutionally required process during the pendency of the case, and Defendants' justification for any such security determination presents factual issues that cannot be resolved on a motion to dismiss.

Plaintiff does not allege that Defendant Morante exercised judicial authority. He alleges that, in her capacity as a statewide judicial security official, she engaged in extra-judicial conduct, including security-related communications and threat classifications, that were not disclosed to the parties and were relied upon in judicial proceedings. Given Defendant Morante's institutional role and access to the judiciary, such allegations are plausible and cannot be dismissed as speculative at the pleading stage.

Whether Defendant Morante communicated security concerns to judges, what information was conveyed, and how such information was used are factual questions. Those facts are uniquely within Defendants' knowledge and control and cannot be resolved on a motion to dismiss.

Courts in this District have held that claims against Defendant Morante alleging unconstitutional conduct are not subject to dismissal at the pleading stage where resolution depends on disputed

facts and the scope of her involvement. In Kollock-Mann v. Morante, Civ. No. 15-4708 (D.N.J. Feb. 28, 2017), the court denied a Rule 12(b)(6) motion asserting qualified immunity, explaining that where liability turns on the nature and extent of a defendant's conduct, the plaintiff is entitled to discovery before the Court resolves immunity.

The same principle applies here. Because Plaintiff's claims against Defendant Morante depend on factual determinations regarding extra-judicial conduct and its effect on judicial proceedings, dismissal on qualified-immunity grounds at this stage would be premature.

IV. Eleventh Amendment immunity does not bar prospective relief

Plaintiff seeks prospective declaratory and injunctive relief to prevent ongoing constitutional violations. Such relief is permitted under Ex parte Young, 209 U.S. 123 (1908). Plaintiff does not seek damages from the State treasury. Sovereign immunity therefore does not require dismissal of these claims at the pleading stage.

Defendants' contention that they are not "persons" under § 1983 and the NJCRA improperly conflates damages claims with claims for prospective relief. Plaintiff seeks declaratory and injunctive relief to prevent ongoing constitutional violations, not retrospective damages from the State treasury. Under settled law, state officials sued in their official capacities for prospective relief are "persons" within the meaning of § 1983 and the NJCRA. Plaintiff's claims fall squarely within this framework. Because Plaintiff alleges ongoing exposure to the challenged practices and seeks forward-looking relief, dismissal on "not a person" grounds is unwarranted at the pleading stage.

V. Prosecutorial immunity does not bar claims based on non-advocative conduct

Plaintiff's claims against Assistant Prosecutor Schaer are limited to alleged conduct occurring outside the traditional advocative role. Plaintiff alleges that security-related characterizations were conveyed to court personnel independent of formal court proceedings and not disclosed on the record. Plaintiff further alleges that such representations were administrative or investigative in nature rather than part of courtroom advocacy. Whether such conduct falls within protected advocacy functions presents a fact-dependent inquiry inappropriate for resolution at the pleading stage.

VI. Younger abstention does not apply

Defendants' arguments also implicitly invoke Rooker-Feldman principles, but that doctrine has no application here. Plaintiff does not seek review, reversal, or nullification of any state-court judgment. He challenges extra-judicial and administrative practices that

operated outside the record and outside the adversarial process, including undisclosed security communications and reliance on sealed or expunged material. Such claims do not complain of injuries "caused by" state-court judgments, but of independent constitutional violations collateral to those proceedings. Because Plaintiff's claims would exist even if no state-court orders had issued, Rooker-Feldman does not deprive this Court of jurisdiction.

The Third Circuit has expressly held that Rooker–Feldman does not bar claims challenging underlying policies or extra-record practices rather than the state-court judgment itself. Allen v. DeBello, 861 F.3d 433, 439 (3d Cir. 2017). Nor does the doctrine apply where the challenged proceedings were interlocutory or ongoing rather than final judgments reviewable by the United States Supreme Court. Malhan v. Secretary United States Dept. of State, 938 F.3d 453, 455 (3d Cir. 2019). Plaintiff challenges administrative and security practices collateral to adjudication, not the correctness of any state-court judgment.

Plaintiff does not ask this Court to overturn custody orders or interfere with family court proceedings. He challenges extra-judicial practices and administrative conduct that cannot be remedied through ordinary family court review.

Younger abstention does not apply where a plaintiff alleges systemic constitutional violations collateral to state proceedings and seeks prospective relief. Plaintiff's claims fall squarely within that category.

VII. Plaintiff has plausibly stated claims for declaratory and injunctive relief

The Amended Complaint expressly pleads claims for declaratory and injunctive relief based on ongoing constitutional violations, including deprivation of a neutral tribunal, use of undisclosed ex parte information, and administrative practices that operate outside the evidentiary record. Those claims are not backward-looking challenges to completed proceedings, but forward-looking challenges to practices that continue to govern Plaintiff's interactions with the same court system and officials. At the pleading stage, Plaintiff need only allege a real and immediate risk of future harm, which he has done by alleging continued exposure to the same tribunal, the same security apparatus, and the same undisclosed practices. Discovery is required to determine the scope, operation, and persistence of those practices.

As to judicial defendants, Plaintiff does not seek damages from judicial defendants for judicial rulings, nor does he seek review or reversal of any state-court judgment. Plaintiff seeks only prospective declaratory and
injunctive relief prohibiting the use of undisclosed security communications, sealed materials, and extra-record inputs in future proceedings.
Plaintiff alleges that he was subjected to administrative security handling implemented through non-public judicial security mechanisms, disseminated outside the docket and

without notice, explanation, or opportunity to contest. Whether such mechanisms exist, how they operate, and whether they were used in Plaintiff's case are factual questions uniquely within Defendants' control and require discovery.

Plaintiff plausibly alleges a real and immediate risk of future harm sufficient to support prospective declaratory and injunctive relief.

Plaintiff seeks limited discovery directed solely to non-adjudicative conduct, including the existence and dissemination of security classifications, administrative handling of filings, and extra-record communications, and does not seek discovery into judicial deliberations, mental impressions, or decisional reasoning.

In the alternative, should the Court determine that any claim or defendant has not been pled with sufficient specificity, Plaintiff respectfully requests leave to amend pursuant to Rule 15(a)(2). Any such amendment would not be futile, as the relevant facts concerning security classifications, extra-record communications, and administrative practices are uniquely within Defendants' knowledge and control and have not yet been the subject of discovery. Dismissal with prejudice at this stage would therefore be inappropriate. Because the relevant information concerning security classifications, internal communications, and administrative handling is uniquely within Defendants' possession and control, dismissal without permitting limited amendment and targeted discovery would be premature under Third Circuit precedent.

## CONCLUSION

State Defendants' Motion to Dismiss depends on factual assumptions, overbroad immunity assertions, and a mischaracterization of Plaintiff's claims. Plaintiff has plausibly alleged constitutional violations based on non-judicial, administrative, and extra-judicial conduct. Because resolution of these claims requires factual development, dismissal at the pleading stage is improper.

For these reasons, the Motion to Dismiss should be denied.

Respectfully submitted,

Christopher Peterson, Plaintiff Pro Se
Email: christopherpeterson847@gmail.com
Service Address: c/o Jared Geist, Esq.
25 Main Street, Suite 202
Hackensack, New Jersey 07601
Dated: March 3, 2026

CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2026, I electronically filed the foregoing Plaintiff's Opposition to the State Defendants' Motion to Dismiss with the Clerk of the Court using the CM/ECF system. I understand that notice of this filing will be sent automatically to all counsel of record who are registered CM/ECF users.

Christopher Peterson, Plaintiff Pro Se
Email: christopherpeterson847@gmail.com
Service Address: c/o Jared Geist, Esq.
25 Main Street, Suite 202
Hackensack, New Jersey 07601
Dated: March 3, 2026