UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| | |
|---|---|
| CHRSTOPHER PETERSON,<br><br>Plaintiff,<br><br>v.<br><br>KAITLYN GROEZINGER, et al.,<br><br>Defendants. | Hon. Michael E. Farbiarz, U.S.D.J.<br>Hon. Andre M. Espinosa, U.S.M.J.<br><br>DOCKET NO. 25-cv-11801<br><br>Civil Action |

**DEFENDANT ROBIN MORANTE'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

JENNIFER DAVENPORT
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625
*Attorney for Defendants, the Hon. Michael Antoniewicz, J.S.C., the Hon. Michael Blee, J.A.D., the Hon. Frances McGrogan, J.S.C., the Hon. Gary Wilcox, J.S.C., Robin Morante, Lee Schaer and David Tang*

On the Brief:
David J. Coppola
Deputy Attorney General

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMEN.....T1

STATEMENT OF FACTS AND PROCEDURAL HISTORY.....2

STANDARD OF REVIEW.....7

A. Rule 15(a)(2).....7

B. Rule 12(b)(1) and (6).....9

ARGUMENT.....10

PLAINTIFF'S MOTION TO AMEND SHOULD BE DENIED BECAUSE PLAINTIFF'S CLAIM AGAINST MS. MORANTE IN THE PROPOSED SECOND AMENDED COMPLAINT IS FUTILE AS A MATTER OF LAW.....10

A. Plaintiff's Claim Against Ms. Morante Is Barred by Eleventh Amendment Sovereign Immunity Because She Is Sued Solely in Her Official Capacity.....12

B. The Ex Parte Young Exception to Sovereign Immunity is Inapplicable to Plaintiff's Claim Against Ms. Morante for Injunctive Relief Because He Only Seeks Retrospective Relief.....14

C. Plaintiff's Claim for Declaratory Relief Fails and Is Futile as a Matter of Law Because Plaintiff Does Not Sufficiently Allege Future Harm.....16

CONCLUSION.....19

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Gould Inc.*,
739 F.2d 858 (3d Cir. 1984) .......... 9

*Alston v. Kean Univ.*,
549 F. App'x 86 (3d Cir. 2013) .......... 11

*Alston v. Parker*,
363 F.3d 229 (3d Cir. 2004) .......... 10

*Alvin v. Suzuki*,
227 F.3d 107 (3d Cir. 2000) .......... 8

*Argen v. Kessler*,
Civ. No. 17-963, 2019 U.S. Dist. LEXIS 79566 (D.N.J. May 10, 2019) .......... 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 10, 19

*Balgowan v. New Jersey*,
115 F.3d 214 (3d Cir. 1997) .......... 19

*Bechtel v. Robinson*,
886 F.2d 644 (3d Cir. 1989) .......... 8, 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 10

*Bistrian v. Levi*,
696 F.3d 352 (3d Cir. 2012) .......... 10

*Blanciak v. Allegheny Ludlum Corp.*,
77 F. 3d 690 (3d Cir. 1996) .......... 9

*Capogrosso v. The Supreme Ct. of New Jersey*,
588 F.3d 180 (3d Cir. 2009) .......... 13, 14

*Const. Party of Pennsylvania v. Cortes*,
824 F.3d 386 (3d Cir. 2016) .......... 15

*Corliss v. O'Brien*,
200 F. App'x 80 (3d Cir. 2006) .......... 17

*Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n*,
573 F.2d 820 (3d Cir. 1978) .......... 8

*Cureton v. Nat'l Collegiate Athletic Ass'n*,
252 F.3d 267 (3d Cir. 2001) .......................................... 8

*Doe v. Div. of Youth & Family Servs.*,
148 F. Supp. 2d 462 (D.N.J. 2001) ............................ 13, 19

*Foman v. Davis*,
371 U.S. 178 (1962) .................................................. 7

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009) ......................................... 10

*Geness v. Admin. Off. of Pennsylvania Cts.*,
974 F.3d 263 (3d Cir. 2020) ......................................... 11

*Great W. Mining & Min. Co. v. Fox Rothschild LLP*,
615 F.3d 159 (3d Cir. 2010) ......................................... 11

*Grohs v. Yatauro*,
984 F. Supp.2d 273 (D.N.J. 2013) .................................. 10

*Hunter v. Supreme Ct. of New Jersey*,
951 F. Supp. 1161 (D.N.J. 1996) ................................... 14

*J.A. v. Monroe Twp. Bd. of Educ.*,
No. 1:20-CV-09498, 2022 WL 970194 (D.N.J. Mar. 31, 2022) ......... 11

*Khodara Envtl., Inc. v. Blakey*,
376 F.3d 187 (3d Cir. 2004) ......................................... 19

*Long v. Wilson*,
393 F.3d 390 (3d Cir. 2004) .......................................... 8

*Major Tours, Inc. v. Colorel*,
720 F. Supp. 2d 587 (D.N.J. 2010) ................................. 16

*Merritts v. Richards*,
62 F.4th 764 (3d Cir. 2023) ..................................... 14, 16

*Michael Cirrincione v. County of Mercer, et al.*,
No. CV 25-16191, 2026 WL 2098880 (D.N.J. July 20, 2026) .......... 12

*Morse v. Lower Merion Sch. Dist.*,
132 F.3d 902 (3d Cir. 1997) ......................................... 10

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
549 F.2d 884 (3d Cir. 1977) .......................................... 9

*Murphy v. Off. of Disciplinary Couns.*,
820 F. App'x 89 (3d Cir. 2020) ..................................... 11

*O'Callaghan v. Hon. X*,
661 F. App'x 179 (3d Cir. 2016) .............................. 17, 18

*Papasan v. Allain*,
478 U.S. 265 (1986) .......................................... 14, 15

*Pub. Serv. Comm'n v. Wycoff Co.*,
344 U.S. 237 (1952) .............................................. 17

*Schilling v. Rogers*,
363 U.S. 666 (1960) .............................................. 18

*Skelly Oil Co. v. Phillips Petroleum Co.*,
339 U.S. 667 (1950) .............................................. 18

*Talbert v. Judiciary of N.J.*,
420 F. App'x 140 (3d Cir. 2011) .............................. 12, 13

*Va. Office for Prot. & Advocacy v. Stewart*,
563 U.S. 247 (2011) .............................................. 14

*Waterfront Comm'n of New York Harbor v. Governor of New Jersey*,
961 F.3d 234 (3d Cir. 2020) ...................................... 14

*Ex parte Young*,
209 U.S. ..................................... 1, 12, 14, 15, 16

**Statutes**

28 U.S.C. § 2201 ................................................ 17

42 U.S.C. 1983 ................................................... 1

ADA .............................................................. 5

Americans with Disabilities Act, 42. U.S.C. § 12101, et seq. ..................................................... 5

Declaratory Judgment Act of 1934 ................................. 17

DJA .......................................................... 17, 18

**Other Authorities**

Eleventh Amendment .......................... 1, 9, 11, 12, 13, 14, 17

Fed. R. Civ. P. 8(e) ............................................. 10

Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ............................. 9

Fed. R. Civ. P. 15(a) ............................................ 11

Fed. R. Civ. P. 57 .......................................... 17

Rule 12(b)(1) .......................................... 9

Rule 12(b)(1) and (6) .......................................... 1, 7, 9

Rule 12(b)(6) .......................................... 9, 11, 12

Rule 15(a)(2) .......................................... 1, 7

Second Amended Complaint. Presumably, "JSMART" .......................................... 3

## PRELIMINARY STATEMENT

In this action, pro se plaintiff Christopher Peterson asserts that he has been wrongly classified as a security threat and problem litigant by Defendant Robin Morante, the Chief Security Officer for the New Jersey Judiciary. Plaintiff alleges, without providing any factual basis, that his constitutional right to access the courts was violated. Plaintiff seeks declaratory and injunctive relief under 42 U.S.C. 1983.

In his initial Complaint, Plaintiff sought relief against Ms. Morante, as well as the Superior Court Judges involved in Plaintiff's underlying state court litigation, including the Hon. Michael Antoniewicz, J.S.C., the Hon. Frances McGrogan, J.S.C., and the Hon. Gary Wilcox, J.S.C., the Hon. Michael Blee, J.A.D., the Acting Administrative Director of the Courts, and State Judiciary employees Lee Schaer and David Tang. The Court granted Defendants' motion to dismiss the Complaint, finding that the defendants were entitled to immunities. Plaintiff now moves to file a Second Amended Complaint ("Motion") (ECF 105), in which he abandons his claims against all other State Defendants and focuses on Ms. Morante.

As discussed in more detail below, Plaintiff's motion for leave to amend should be denied as futile because the *Ex parte Young* exception to sovereign immunity does not apply to Plaintiff's

claim against Ms. Morante in that the declaratory and injunctive relief sought is retrospective not prospective in nature. Additionally, Plaintiff's claim for declaratory relief fails because he does not sufficiently allege future harm.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

Plaintiff initiated this action by filing his initial Complaint on June 15, 2025. ECF 1. Plaintiff then filed a First Amended Complaint on October 20, 2025. ECF 16. Plaintiff's claims set forth in the First Amended Complaint arise from his parenting disputes with co-defendant Kaitlyn Groezinger, who is the mother of Plaintiff's minor child, E.P., *id.* at ¶¶ 34-35, and the state family court proceedings related to those disputes. It also appears that Plaintiff's claims relate to domestic violence proceedings in state family and criminal courts. *Id.* at ¶¶ 81, 85. In the First Amended Complaint, Plaintiff asserted eleven causes of action based on alleged civil rights violations against various defendants, including the State Defendants.[1]

[1] The "State Defendants" include the Hon. Michael Antoniewicz, J.S.C., the Hon. Michael Blee, J.A.D., the Hon. Frances McGrogan, J.S.C., the Hon. Gary Wilcox, J.S.C., Robin Morante, Lee Schaer and David Tang; as well as Bergen County Assistant Prosecutor Lee Schaer. ECF 1, 18. Undersigned counsel represents all of these defendants in connection with this litigation. For a detailed factual background of Plaintiff's allegations against the State Defendants in the prior complaints, Defendant respectfully directs the Court to the January 20, 2026 motion to dismiss (ECF 61).

The State Defendants filed a motion to dismiss Plaintiff's First Amended Complaint on January 20, 2026. ECF 61. On May 8, 2026, the Court issued a text order granting the State Defendants' motion to dismiss. ECF 96. The Court did not issue a formal opinion dismissing Plaintiff's claims against the State Defendants, but provide its reasoning in the text order. Briefly, the Court dismissed all official capacity Section 1983 claims, and dismissed the remaining claims pursuant to immunities raised in the State Defendant's motion to dismiss at ECF 61, which included judicial immunity, quasi-judicial immunity and qualified immunity. ECF 96. Specifically, with respect to Ms. Morante, the Court dismissed Plaintiff's claims pursuant to qualified immunity. *Id.*

On July 9, 2026, Plaintiff filed the instant Motion for Leave to File a Second Amended Complaint. ECF 105. Plaintiff's proposed Second Amended Complaint removes all of the State Defendants *except* Ms. Morante. *See* Proposed Second Amended Complaint ("Proposed Sec. Am. Compl.") (ECF 105). Plaintiff sues Ms. Morante solely in her official capacity as Chief of Court and Judicial Security for the State of New Jersey. *Id.*, Count Eight, ¶¶386-397. Plaintiff alleges that Ms. Morante oversees, administers, maintains, disseminates, implements, reviews, or has authority to correct court-security threat designations, JSMART[2]-related threat-risk

[2] "JSMART" is not defined in Plaintiff's motion or the proposed Second Amended Complaint. Presumably, "JSMART" refers to the New

information, courthouse-security alerts, and similar judicial-security classifications that affect litigants, including Plaintiff. *Id.* at ¶281. As to Ms. Morante, Plaintiff seeks only prospective declaratory and injunctive relief directed to any ongoing court-security designation, JSMART-related designation, courthouse-security alert, threat-risk classification, or dissemination of threat-risk information concerning Plaintiff. *Id.* at Count Eight, ¶¶386-397.

Plaintiff alleges that, upon information and belief, New Jersey court-security officials use systems, databases, lists, alerts, JSMART-related information, or internal communications to identify litigants considered security risks. *Id.* at ¶279. This information may be disseminated to judges, chambers staff, court administration, sheriff's officers, courthouse security personnel, law-enforcement personnel, or other court-related officials. *Id.* at ¶280. Plaintiff pleads that Ms. Morante's responsibilities include warning judges and courthouse-security personnel about perceived threats, "problem litigants," or persons classified as security risks. *Id.* at ¶282. Plaintiff further pleads that he has been treated as a court-security concern, judicial-security concern, threat, threat-risk subject, or "problem litigant" in court-related systems, courthouse-security communications,

Jersey Judiciary Security Management Response Team.

JSMART-related records, judicial-security alerts, or similar mechanisms. *Id.* at ¶283.

In support of his claim of heightened treatment, Plaintiff describes security measures allegedly implemented during proceedings before Judge Wilcox and Judge Antoniewicz. *Id.* at ¶283. Plaintiff alleges that during his criminal proceedings before Judge Wilcox, the prosecutor was accompanied by a plain-clothes security detail at Plaintiff's hearings for more than one year, and that the existence of that plain-clothes detail was confirmed on the record during a January 25, 2024 hearing. *Id.* at ¶283. Plaintiff also alleges that approximately two days before he was barred from appearing physically in Judge Antoniewicz's courtroom, approximately four sheriff's officers escorted another litigant, Groezinger, into and out of the courtroom. *Id.* at ¶283. After that hearing, a sheriff's officer told Plaintiff in substance that when officers were called in, the situation had been described as though Plaintiff was a "monster," but that he appeared to be a good father fighting for his children. *Id.* at ¶283. Plaintiff alleges that beginning on or about October 10, 2025, he was barred from appearing physically in Judge Antoniewicz's courtroom and required to appear by Zoom despite submitting an ADA[3] accommodation request seeking in-person access,

[3] "ADA" is not defined in Plaintiff's proposed Second Amended Complaint. Presumably, "ADA" refers to the Americans with

and that he had appeared in person approximately two days earlier without incident. *Id.* at ¶284.

Plaintiff attributes these measures to undisclosed court-security or JSMART-related classifications and contends he received no process to challenge them. *Id.* at ¶287. Plaintiff alleges that he was not provided notice of any threat designation, security classification, factual basis, report, or procedure to contest the security treatment. *Id.* at ¶286. He further alleges that he was not provided the records, allegations, reports, communications, or criteria relied upon; and that he was not given an opportunity to contest, correct, appeal, or seek review of any such classification. *Id.* at ¶¶289-290.

Plaintiff also pleads the alleged scope and effects of any such designation. He alleges that secret court-security classifications burden access to court by causing judges, court staff, sheriff's officers, and courthouse personnel to view ordinary litigation activity, service of papers, objections, appeals, motions, or requests for relief as suspicious, threatening, or dangerous, with especially harmful effects on pro se litigants. *Id.* at ¶¶291-293. Plaintiff alleges that any ongoing designation affects his access to court, the manner in which court and security personnel perceive him, and the fairness

---

Disabilities Act, 42. U.S.C. § 12101, et seq.

or appearance of neutrality in proceedings. *Id.* at ¶296. He also claims that it chills his willingness to file motions, serve legal papers, attend court, seek relief, or lawfully document public-official conduct. *Id.* at ¶297.

In the proposed Second Amended Complaint, Plaintiff asserts only one claim against Ms. Morante: Count Eight, a Section 1983 claim seeking prospective declaratory and injunctive relief regarding his judicial security classification. *Id.* at ¶¶386-397.

Plaintiff seeks an order requiring notice of any ongoing designation, disclosure of the factual basis sufficient to permit meaningful review, an opportunity to contest or correct inaccurate information, and procedures to prevent secret, unsupported, retaliatory, or mistaken classifications; and he seeks to prohibit maintaining or disseminating false, unsupported, retaliatory, or materially misleading security classifications concerning him without constitutionally adequate notice and an opportunity to be heard. *Id.* at ¶¶393-394, 397.

## STANDARD OF REVIEW

This motion is governed by Fed. R. Civ. P. 15(a)(2) as well as Fed. R. Civ. P. 12(b)(1) and (6). The standards applicable to these Rules are discussed below.

### A. Rule 15(a)(2)

Pursuant to Rule 15(a)(2), leave to amend the pleadings is generally granted freely. *See Foman v. Davis*, 371 U.S. 178, 182

(1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." Id. However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

In deciding whether to grant leave to amend, "prejudice to the non-moving party is the touchstone for the denial of the amendment." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (quoting *Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)). To establish prejudice, the non-moving party must make a showing that allowing the amended pleading would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction. *See Long*, 393 F.3d at 400. Delay alone, however, does not justify denying a motion to amend. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir.

2001).

Rather, it is only where delay becomes " 'undue,' placing an unwarranted burden on the court, or ... 'prejudicial,' placing an unfair burden on the opposing party" that denial of a motion to amend is appropriate. *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984).

**B. <u>Rule 12(b)(1) and (6)</u>**

Plaintiff's Proposed Second Amended Complaint, specifically Count Eight, the only claim against Ms. Morante (Proposed Sec. Am. Compl., ¶¶386-397) is futile and subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Rule 12(b)(1) governs dismissal for lack of subject matter jurisdiction.[4] In evaluating a motion to dismiss under Rule 12(b)(1), a district court must first determine whether the defendant's motion attacks (1) the complaint as deficient on its face; or (2) the existence of subject matter jurisdiction in fact. *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977). Where, as here, a Rule 12(b)(1) motion facially attacks the complaint, the court must take all allegations in the complaint as true. *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint for

[4] Motions to dismiss based upon Eleventh Amendment immunity are properly viewed as motions "to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1)." *Blanciak v. Allegheny Ludlum Corp.,* 77 F. 3d 690, 693 n.2 (3d Cir. 1996).

failure to allege sufficient factual matter which, accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell* Atl. *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding the motion, the court first separates the factual and legal elements of the claim, *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), accepting as true all "well-pled factual allegations" and drawing all reasonable inferences in favor of the plaintiff, *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012). Next, the court determines whether the actual facts alleged in the complaint are "sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

While the court construes a complaint "so as to do justice," Fed. R. Civ. P. 8(e), and pro se complaints are to be construed liberally, *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004), the court is not required to "credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp.2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).

## ARGUMENT

### PLAINTIFF'S MOTION TO AMEND SHOULD BE DENIED BECAUSE PLAINTIFF'S CLAIM AGAINST MS. MORANTE IN THE PROPOSED SECOND AMENDED COMPLAINT IS FUTILE AS A MATTER OF LAW.

Plaintiff's motion to amend should be denied as futile with

respect to the proposed Section 1983 claims against Ms. Morante. *See* Proposed Sec. Am. Compl., ¶¶386-397. Plaintiff's proposed Section 1983 claim for prospective declaratory and injunctive relief against Ms. Morante, sued exclusively in her official capacity, is fatally flawed for a number of reasons.

Under Fed. R. Civ. P. 15(a), leave to amend should be freely given when justice so requires, but courts may deny leave when amendment would be futile. Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted — the same standard of legal sufficiency as applies under Rule 12(b)(6). *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010); *Geness v. Admin. Off. of Pennsylvania Cts.*, 974 F.3d 263 (3d Cir. 2020).

Where multiple threshold defenses each independently bar the proposed claim, amendment is futile. For example, in *Murphy v. Off. of Disciplinary Couns.*, 820 F. App'x 89 (3d Cir. 2020), the Third Circuit held that leave to amend was futile where the plaintiff failed to explain how any amendment could overcome the immunities — including quasi-judicial immunity — that barred most of his claims. *Alston v. Kean Univ.*, 549 F. App'x 86 (3d Cir. 2013) held that amendment was futile where the Eleventh Amendment would still bar the claim. *J.A. v. Monroe Twp. Bd. of Educ.*, No. 1:20-CV-09498, 2022 WL 970194 (D.N.J. Mar. 31, 2022) held that the Eleventh Amendment serves as an absolute bar and amendment of the

claims would be futile. *Michael Cirrincione v. County of Mercer, et al.*, No. CV 25-16191, 2026 WL 2098880 (D.N.J. July 20, 2026) confirms that a court may deny leave to amend where the plaintiff seeks to assert a claim against a defendant shielded by sovereign immunity as futile for want of jurisdiction.

Here, the proposed Section 1983 claim against Ms. Morante faces at least four independently sufficient grounds for dismissal: (1) Eleventh Amendment immunity; (2) the *Ex parte Young* exception does not apply; (3) Ms. Morante is entitled to qualified immunity; and (4) Plaintiff's claim for declaratory relief fails. The cumulative weight of these defenses makes amendment futile under the Rule 12(b)(6) standard.

As such, and discussed in more detail below, Plaintiff's motion to amend should be denied as futile.

**A. <u>Plaintiff's Claim Against Ms. Morante Is Barred by Eleventh Amendment Sovereign Immunity Because She Is Sued Solely in Her Official Capacity.</u>**

Plaintiff's Section 1983 claim in Count Eight (Proposed. Sec. Am. Compl., ¶¶386-397) is subject to dismissal because Ms. Morante, who is sued only in her official capacity as an employee of the New Jersey Judiciary, is entitled to Eleventh Amendment immunity. As such, a judgment against Ms. Morante would effectively be a judgment against the state. *Talbert v. Judiciary of N.J.*, 420 F. App'x 140, 141 (3d Cir. 2011) (holding that the New Jersey state court system is entitled to Eleventh Amendment immunity).

The Third Circuit has repeatedly held that New Jersey state court officials and administrators sued in their official capacities are entitled to Eleventh Amendment immunity because any judgment against them would effectively be a judgment against the state. As noted above, the Third Circuit in *Talbert*, the Third Circuit held that the New Jersey court system is an unconsenting state entity entitled to Eleventh Amendment immunity. In *Robinson v. New Jersey Mercer Cnty. Vicinage-Fam. Div.*, the Third Circuit affirmed the lower court's dismissal of claims against individual judicial defendants as barred by the Eleventh Amendment. 514 F. App'x 146, 149 (3d. Cir. 2013) ("both the court itself and its employees in their official capacities were unconsenting state entities entitled to immunity under the Eleventh Amendment."). *Capogrosso v. The Supreme Ct. of New Jersey*, 588 F.3d 180 (3d Cir. 2009) affirmed the lower court's finding that the Advisory Committee on Judicial Conduct and its employees sued in their official capacities were entitled to Eleventh Amendment immunity from § 1983 claims. *Id.* at 185. Congress's enactment of § 1983 did not abrogate New Jersey's immunity.

Here, Plaintiff's asserts a singular Section 1983 claim against Ms. Morante in her official capacity as the Chief of Court and Judicial Security for the New Jersey judiciary. As the law above makes clear, the New Jersey judiciary and employees of the judiciary in their official capacity, such as Ms. Morante, are

entitled to sovereign immunity. *Robinson*, 514 F. App'x at 149; *Capogrosso*, 588 F.3d 180 at 185. As such, Plaintiff's proposed Section 1983 claim against Ms. Morante is futile.

**B. The Ex Parte Young Exception to Sovereign Immunity Is Inapplicable to Plaintiff's Claim Against Ms. Morante for Injunctive Relief Because He Only Seeks Retrospective Relief.**

The *Ex parte Young* doctrine provides a narrow exception to Eleventh Amendment immunity – a state official may be sued in federal court in her official capacity for prospective injunctive or declaratory relief to end an ongoing violation of federal law. *Hunter v. Supreme Ct. of New Jersey*, 951 F. Supp. 1161, 1178 (D.N.J. 1996); *see also Merritts v. Richards*, 62 F.4th 764 (3d Cir. 2023)("...for the *Ex parte Young* exception to apply, there must be both an ongoing violation of federal law and a request for relief that can be properly characterized as prospective."). The Third Circuit has narrowly construed the doctrine to apply in the situation in which a federal court commands a state official to do nothing more than refrain from violating federal law. *Waterfront Comm'n of New York Harbor v. Governor of New Jersey*, 961 F.3d 234 (3d Cir. 2020)(citing *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011)).

The *Merritts* court noted that past actions with present effects do not constitute ongoing violations. 62 F.4th at 772 (citing *Papasan v. Allain*, 478 U.S. 265 (1986))("...earlier

actions may have present effect, that does not mean that they are ongoing.") Similarly, the *Papasan* court decided that *Young* was been focused on cases in which a violation of federal law by a state official was *ongoing* as opposed to cases in which federal law has been violated at one time or over a period of time in the past. 478 U.S. at 277-78.

Additionally, for *Ex parte Young* to apply, the defendant against whom relief is sought must have a sufficient connection to the enforcement of the challenged policy. For example, *Const. Party of Pennsylvania v. Cortes*, 824 F.3d 386 (3d Cir. 2016) confirms that the defendant must "have some connection with the enforcement of the act." *Id.* at 396 (citing *Ex parte Young*, 209 U.S. at 157).

Here, the *Ex parte Young* exception does not apply because Plaintiff does not sufficiently allege an ongoing violation of federal law or a connection between the enforcement of the alleged classification and Ms. Morante. The fact that the alleged security classification decision that was made in the past might continue to affect Plaintiff's access to the courthouse — does not constitute an ongoing violation under Third Circuit precedent.[5]

---

[5] It should be noted that, to the extent Plaintiff asserts that the alleged security measures have influenced his state trial court proceedings, his proper recourse to address the same would be through the state appellate court. *See* Proposed Sec. Am. Compl., ¶389 ("...ongoing classification or dissemination of that classification affects his access to court and the fairness or

*Merritts*, 62 F.4th at 772 is guiding: although earlier actions may have present effect, that does not mean that they are ongoing. Plaintiff's proposed Second Amended Complaint alleges only that Ms. Morante made a past classification decision without notice, and that the classification remains in effect, does not plausibly allege the kind of continuing, present violation of federal law that *Ex parte Young* requires. There are no allegations that Ms. Morante is presently violating federal law. Moreover, any claim that Plaintiff's access to the courts has been diminished is belied by the admission that he still has access to courts – albeit virtually through Zoom. Proposed Sec. Am. Compl., ¶284.

Overall, all of Plaintiff's alleged harms are framed by past measures. As such, because the claims target past-and-continuing internal administrative classifications and seek system-wide reforms, without a specific ongoing enforcement action by Ms. Morante, *Ex parte Young*'s narrow exception does not apply.

### C. **Plaintiff's Claim for Declaratory Relief Fails and Is Futile as a Matter of Law Because Plaintiff Does Not Sufficiently Allege Future Harm.**

Plaintiff's claim for prospective declaratory relief in Count Eight (Proposed Sec. Am. Compl., ¶¶386-397) also fails. The

---

apparent neutrality of proceedings."); *Major Tours, Inc. v. Colorel*, 720 F. Supp. 2d 587, 592 (D.N.J. 2010) ("According to the *Rooker-Feldman* doctrine, a federal district court cannot entertain what is functionally an appeal from a state court decision because Congress has only granted the power to hear such appeals to the United States Supreme Court. 28 U.S.C. § 1257.").

Declaratory Judgment Act of 1934 ("DJA") empowers a federal court to declare a party's rights, irrespective of whether alternative relief is or could be sought. *See* 28 U.S.C. § 2201; Fed. R. Civ. P. 57. The Supreme Court has found that the declaratory judgment statute "is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Green*, 474 U.S. at 72 (quoting *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241 (1952)).

Akin to injunctive relief, declaratory relief against a state official must be prospective because retrospective relief does not escape an Eleventh Amendment sovereign immunity bar. *Green*, 474 U.S. at 73. To state a plausible claim for prospective declaratory relief, a plaintiff must plead facts to give rise to relief "in the true legal sense." *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006). Specifically, a plaintiff cannot request a district court to "declare" that a state official violated his constitutional rights because declaratory relief is an inappropriate procedural vehicle to adjudicate past conduct or proclaim that liability of a party. *Id.; see also O'Callaghan v. Hon. X*, 661 F. App'x 179, 182 (3d Cir. 2016) (declaratory relief defines legal rights and obligations of the named parties in anticipation of future conduct, not liability for past actions).

The DJA only "enlarge[s] the range of remedies available in the federal courts [and does] not extend their jurisdiction."

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). The DJA does not provide a standalone basis for federal subject-matter jurisdiction. *Argen v. Kessler*, Civ. No. 17-963, 2019 U.S. Dist. LEXIS 79566, at *3 (D.N.J. May 10, 2019). "To state it differently, the DJA is not itself an independent cause of action sufficient to invoke the court's federal-question jurisdiction; the availability of relief under the DJA 'presupposes the existence of a judicially remediable right.'" *Id.* (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)).

Here, Plaintiff's claims fail as a matter of law against Ms. Morante because it cannot stand alone. *See Argen*, 2019 U.S. Dist. LEXIS 79566, at *8 ("the viability of the declaratory judgment claim depends on whether any portion of the plaintiffs' § 1983 claim remains intact"). Even if the Court were to consider Plaintiff's claim seeking declaratory judgment, his claim would fail because he has not "allege[d] facts from which it appear[s] substantially likely that he would suffer future injury." *O'Callaghan*, 661 F. App'x at 182 (emphasis in original). Plaintiff seeks various declarations concerning the operations of the courts. *See* Proposed Sec. Am. Compl., ¶13 ("Plaintiff seeks prospective declaratory and injunctive relief only, directed to any ongoing court-security designation, JSMART-related designation, courthouse-security alert, threat-risk classification, or dissemination of threat-risk information

concerning Plaintiff.")

Plaintiff seeks declarations that ultimate do not allege that he will suffer any future harm if the declarations are not granted. *See Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004) ("[D]eclaratory judgments are typically sought before a completed injury has occurred."). By merely alleging that he seeks prospective declaratory relief against Ms. Morante, Plaintiff has not satisfied his burden of showing that he is likely to suffer future injury at the hands of a named party. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"). His position belies precedent. *See Doe v. Div. of Youth & Family Servs.*, 148 F. Supp. 2d 462, 483 (D.N.J. 2001) (citing *Balgowan v. New Jersey*, 115 F.3d 214, 217 (3d Cir. 1997)).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to file a Second Amended Complaint as to Ms. Morante should be denied.

Respectfully submitted,

JENNIFER DAVENPORT
ATTORNEY GENERAL OF NEW JERSEY

By: s/ David J. Coppola
David J. Coppola
Deputy Attorney General

Dated: August 25, 2026