UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ***Plaintiff,*** CHRISTOPHER PETERSON,<br><br>v.<br><br>***Defendants,*** KAITLYN GROEZINGER, BRYAN GURNEY, MARK MESSNER, BOROUGH OF WALDWICK, BOROUGH OF OAKLAND, BOROUGH OF RAMSEY, MEREDITH BENDIAN, in her individual capacity and official capacity as Borough Clerk and/or records custodian for the Borough of Ramsey, DONALD HARVEY, MATTHEW LOPEZ, HANK ANDERSON, DYLAN RITONDALE, OFFICER BERNHARD, Badge No. 61, first name presently unknown, SERGEANT CHRISTOPER SANCHEZ, LAWRENCE KLEINER, THE BEHAVED BRAIN, LLC, ROBIN NORANTE, in her official capacity as Chief of Court and Judicial Secretary for the State of New Jersey, and JOHN DOES 1-20. | Civil Action Case No.: 2:25-cv-11801 (MEF-AME) |

# DEFENDANTS' MESSNER, BOROUGH OF WALDWICK, BOROUGH OF OAKLAND, HARVEY, LOPEZ, ANDERSON, RITONDALE, BERNHARD, AND SANCHEZ'S BRIEF IN OPPOSITION TO PLAINTIFF'S REQUEST MOTION SEEKING LEAVE TO FILE A SECOND AMENDED COMPLAINT

*<u>Of Counsel and On the Brief</u>*
*Mary C. McDonnell, Esq.*

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ....................................................................1

STATEMENT OF FACTS ........................................................................2

LEGAL ARGUMENT ..............................................................................8

I. PLAINTIFF'S CLAIMS AGAINST THE WALDWICK DEFENDANTS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS..........................................................8

II. PLAINTIFF'S COMPLAINTS AGAINST DEFENDANTS ARE BARRED BY THE NOTICE PROVISION OF THE TORTS CLAIM ACT..........................................................................10

III. THE SAC FAILS TO STATE A § 1983 CLAIM FOR SUPERVISORY LIABILITY AGAINST CHIEF MESSNER...............................................................13

IV. THE SAC FAILS TO STATE § 1983 CLAIMS AGAINST OAKLAND'S OFFICERS HARVEY, LOPEZ, AND ANDERSON...............................................................14

A. Plaintiff Does Not Sufficiently Allege Personal Involvement to Bring These Claims Against Officers Harvey, Lopez, and Anderson..........15

B. Qualified Immunity Bars Claims Where Plaintiff Has Not Plausibly Alleged a Clearly Established Right..........................................16

C. The SAC Does Not Plausibly Allege Unreasonable Seizure..............19

D. The SAC Does Not Plausibly Allege First Amendment Retaliation or Interference...............................................................20

V. THE SAC FAILS TO STATE A CLAIM AGAINST OFFICER RITONDALE FOR MALICIOUS PROSECUTION ...............................................................21

VI. THE SAC FAILS TO STATE § 1983 CLAIMS AGAINST OFFICERS BERNHARD AND SANCHEZ FOR SERVICE-OF-PROCESS INTERFERENCE ...............................................................24

VII. THE SAC FAILS TO STATE *MONELL* CLAIMS AGAINST THE BOROUGH OF WALDWICK AND THE BOROUGH OF OAKLAND...............................................................25

VIII. STATE LAW CLAIMS UNDER THE NEW JERSEY CIVIL RIGHTS ACT FAIL...............................................................27

IX. TO THE EXTENT THE SAC SEEKS PUNITIVE DAMAGES AGAINST MUNICIPAL DEFENDANTS OR DAMAGES BARRED BY IMMUNITY, THOSE CLAIMS MUST BE DISMISSED. ......29

X. PLAINTIFF CANNOT ESTABLISH A CONSPIRACY CLAIM AGAINST ANY OF THE POLICE DEFENDANTS ........................29

XI. STANDARD OF REVIEW ..............................................................30

**CONCLUSION**.........................................................................................302

# TABLE OF AUTHORITIES

**Cases**

*3085 Kennedy Realty Co. v. Tax Assessor of Jersey City*, 287 N.J. Super. 318, 671 A.2d 137 (App. Div. 1996) ....9

*Adams v. Gould Inc.*, 739 F.2d 858 (3d Cir. 1984) ....31

*Alvin v. Suzuki*, 227 F.3d 107 (3d Cir. 2000) ....30

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....15

*Bechtel v. Robinson*, 886 F.2d 644 (3d Cir. 1989) ....31

*Brosseau v. Haugen*, 543 U.S. 194 (2004) ....18

*Burtch v. Milberg Factors, Inc.*, 662 F.3D 212 (3d Cir. 2011) ....16, 20, 21, 25

*Capogrosso v. Supreme Court of N.J.*, 588 F. 3d 180 (3d Cir. 2009) ....30

*Chalet v. State*, 2022 N.J. Super. Unpub. LEXIS 1961 (2022) ....27, 28

*Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210 (3d Cir. 2015) ....15

*Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267 (3d Cir. 8 2001) ....31

*Foman v. Davis*, 371 U.S. 178 (1962) ....30

*Giles v. Kearney*, 571 F.3d 318 (3d Cir. 2009) ....18

*Great W. Mining and Mineral Co. v. Fox Rothschild LLP*, 615 F. 3d 159 (3d. Cir. 2010) ....................30

*Haas v. N.J. Pinelands Com*, 227 N.J. Super. 313 (Ch. Div. 1988) ....................29

*Harlow v. Fitzgerald*, 457 U.S. 800, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1981) ....17

*Heyert v. Taddese*, 431 N.J. Super. 388, 70 A.3d 681 (App. Div. 2013) ..............9

*In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410 (3d Cir. 1997) ....15

*Johnson v. Knorr*, 477 F.3d 75 (3d Cir. 2007) ....................22

*Karczewski v. Nowicki*, 188 N.J. Super. 355 (App. Div. 1982) ....................11

*Long v. Wilson*, 393 F.3d 390 (3d Cir. 2004) ....................30, 31

*Malley v. Briggs*, 475 U.S. 335 (1986) ....................17

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ....................17

*Morillo v. Torres*, 222 N.J. 104 (2015) ....................27, 28

*Mullenix v. Luna*, 578 U.S. 7 (2015) ....................18

*Owens v. Fergin*, 394 N.J. Super. 85 (App. Div. 2007) ....................12

*Pearson v. Callahan*, 555 U.S. 223 (2009) ....................17, 18

*Perez v. Zagami, LLC*, 218 N.J. 202 (2014) ....................27

*Port of Monmouth Development v. Middletown*, 229 N.J. Super. 445 (App. Div. 1988) .......... 12

*Ramos v. Flowers*, 429 N.J. Super. 13 (App. Div. 2012) .......... 17, 29

*Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir. 1988) .......... 15

*Santiago v. Warminster Twp.*, 629 F. 3d 121 (3d Cir. 2010) .. 13, 15, 16, 23, 25, 26

*Stoeckel v. Township of Knowlton*, 387 N.J. Super. 1 (App. Div. 2006) .......... 12

*Stringer v. Cnty. of Bucks*, 141 F.4th 76 (3d Cir. 2025) (per curiam) .......... 19

*Tumpson v. Farina*, 95 A.3d 210 (N.J. 2014) .......... 15

*Uneze v. Greystone Park Psychiatric Hosp.*, 2022 N.J. Super. Unpub. LEXIS 394 (2022) .......... 27

*Velez v. City of Jersey City*, 180 N.J. 284 (2004) .......... 10

*Zaloga v. Borough of Moosic*, 841 F.3d 170 (3d Cir. 2016) .......... 18

**Statutes**

§ 1983 .......... i, 9, 13, 14, 15, 22, 24, 25, 29

42 U.S.C. § 1983 .......... 1, 9

42 U.S.C.S. §1983 ....................................................................................27

N.J.S.A. 10:6-2 ....................................................................................27

N.J.S.A. 2A:14 ....................................................................................8

N.J.S.A. 2A:14-2 ....................................................................................9

N.J.S.A. 59:8-3 ....................................................................................10

N.J.S.A. 59:8-4 ....................................................................................11

N.J.S.A. 59:8-8 ....................................................................................10, 11

**Other**

Fed. R. Civ. P. 15 ....................................................................................30

Rule 15 ....................................................................................30

## PRELIMINARY STATEMENT

This brief is submitted on behalf of Defendants, Chief Mark Messner, Dylan Ritondale, Officer Bernhard and the Borough of Waldwick (the "Waldwick Defendants") and Defendants the Borough of Oakland, Donald Harvey, Matthew Lopez, Hank Anderson, and Sergeant Christopher Sanchez (the "Oakland Defendants") in opposition to Plaintiff's Motion Seeking Leave to File his Second Amended Complaint ("SAC"). These moving Defendants submit that Plaintiff's revised Complaint fails to cure the deficiencies raised in previous moving papers and fails to set forth any valid causes of action as a matter of law against these moving defendants. Plaintiff's proposed SAC is a sprawling 92-page pleading that asserts nine counts under 42 U.S.C. §1983, the New Jersey Civil Rights Act ("NJCRA"), and other related state law theories against the police defendants.

Plaintiff's claims against the Waldwick and Oakland Defendants are narrowly limited to three discrete actions, one incident involving a domestic violence incident that occurred in 2019 and the related OPRA request submitted in December of 2019 in Waldwick (which is barred by both the Torts Claim Act and the Statute of Limitations), an incident that occurred in Oakland on June 5, 2025 at police headquarters during a custodial exchange and a third separate incident that occurred on August 19, 2025 when codefendant Groezinger reported a suspicious person at her home in Waldwick where she feared for her safety. Neither of the 2025 incidents

resulted in an arrest or charges being brough against Plaintiff and the claims made against the Oakland and Waldwick police officers are entirely without merit. The police were merely investigating complaints made by codefendant Groezinger. As plaintiff's proposed SAC fails to set forth any cognizable claims, his motion seeking leave to amend the complaint should be denied in its entirety as it pertains to these moving police defendants.

## STATEMENT OF FACTS

### The Waldwick Defendants

- Borough of Waldwick – (Exhibits "A", "B" and "C")
- Chief Mark Messner – Only involved in 2019 OPRA request (Exhibits "A" and "B")
- Police Officer Dylan Ritondale – Only involved in incident that occurred on 4/17/20 (Exhibit "C")
- Police Officer Bernhard – Only involvement is that he spoke with a process server on August 19, 2025 after receiving a complaint (Exhibit "F")
- Sergeant Christopher Sanchez- Only involvement is responding to an April 17, 2020 incident and spoke with process server August 19, 2025 (Exhibit "C").

### The Oakland Defendants

- Borough of Oakland – (Exhibit "D" and "E")
- Police Officer Donald Harvey - Only involved in 6/5/25 incident (Exhibit "D" and "E")
- Police Officer Matthew Lopez – Only involved in 6/5/25 incident (Exhibit "D" and "E")
- Police Officer Hank Anderson – Only involved in 6/25/25 incident (Exhibit "D" and "E")

Plaintiff's lengthy SAC asserts claims arising from four separate and independent instances of alleged conduct, including: (1) alleged release and use of Plaintiff's sensitive law-enforcement records via OPRA (an incident that occurred in 2019 and 2020)(Exhibit "A" an "B"); (2) alleged initiation or continuation of criminal proceedings (an incident that occurred on April 17, 2020)(Exhibit "C"); (3) alleged unlawful detention and interference with recording during a June 5, 2025 custody exchange at police headquarters in Oakland (Exhibit "D"); and (4) alleged interference with service of process in August of 2025 in Waldwick (Exhibits "E" and "F"). As set forth herein and as evidenced by the exhibits "A" – "F" plaintiff has not established any valid cause of action against the Waldwick or Oakland Defendants who were simply doing their job in responding to citizen complaints.

### A. Claims Against the Waldwick Defendants

Plaintiff's SAC asserts claims against the actions of the Waldwick Police Department, it's former Chief of Police, Mark Messner, Police Officer Dylan Ritondale, Police Officer Bernhard, and Sergeant Christoper Sanchez.

The alleged actions by the Waldwick Defendants are limited to three (3) separate occurrences, which occurred in December 2019, April 2020 and August 2025. These incidents are summarized below:

1) Plaintiff alleges that Chief Messner improperly released a domestic violence report in response to an OPRA request. (SAC at ¶ 104-¶ 113). Defendant Messner denies any improper conduct but concedes that there was an OPRA request submitted on December 19, 2019 (Exhibits "A" and

"B").

2) The second incident involves Police Officer Dylan Ritondale and Sergeant Christopher Sanchez[1], who responded to a domestic violence complaint on April 17, 2020. With respect to Officer Ritondale, Plaintiff alleges that Officer Ritondale submitted a probable-cause affidavit which "included terroristic threats and endangering the welfare of a child." (SAC at ¶ 240-¶ 241). A grand jury later found probable cause and indicted plaintiff. "Exhibit "C".

3) The third incident occurred on August 19, 2025, at which time Plaintiff alleges that both Officer Bernhard and Sergeant Christopher Sanchez "instructed the process server not to return to Groezinger's residence . . ." (SAC at ¶ 277). The police report evidences the event. Exhibits "D" and "E".

As previously set forth in the Waldwick Defendants' prior motion to dismiss, any claims asserted against Chief Messner and Officer Dylan Ritondale are barred by the relevant statute of limitations and by the provisions of New Jersey's Tort Claim Act as well as the grand jury's probable cause determination.

The sole allegation against Chief Messner is that domestic violence records were inappropriately released to codefendant Chief Gurney of the Ramsey Police Department. (SAC at ¶ 104-¶ 113). Chief Gurney submitted an OPRA request to the Waldwick Police Department on December 19, 2019. (SAC at ¶ 103). A Torts Claim Notice was filed on March 3, 2020. The original complaint for this dispute

---

[1] With respect to Sergeant Christopher Sanchez, Plaintiff claims that he "does not assert a standalone damage claim against Sanchez merely for being present at the April 17, 2020 incident. . ." (SAC at ¶ 239). Instead, in an attenuated manner, Plaintiff posits that "Sanchez's April 17, 2020 presence at this stage as relevant to knowledge, context, patter, motive, and the plausibility of Plaintiff's allegations concerning later Waldwick conduct, including the August 19, 2025 service-of-process interference." (SAC at ¶ 239).

was filed well outside the two-year statute of limitations on June 15, 2025. *Pro Se* Plaintiff's Amended Complaint was not filed until October 31, 2025, nearly six (6) years after the OPRA request was filed. Plaintiff now seeks to amend his complaint to include these claims that are barred both by the statute of limitations and by the Torts Claim Act. Since Plaintiff's claims against Chief Messner and the Borough of Waldwick occurred in 2019 and 2020, these claims are barred by the statute of limitations and by the provisions of New Jersey's Tort Claim Act, Plaintiff's request to file a Second Amended Complaint should be denied.

Similarly, the claims against Defendant Officer Ritondale are barred by the statute of limitations, plaintiff's failure to comply with the provisions of the Torts Claim Act and by the grand jury's determination of probable cause. Officer Ritondale responded to a domestic violence call in Waldwick on April 17, 2020. He swore out an affidavit of probable cause and a grand jury issued an indictment for Plaintiff (Exhibit "C"). Since Plaintiff now seeks to file the SAC in September of 2026, and he has not served a Torts Claim Notice against Defendant Ritondale, his claims are clearly barred by the statute of limitations. Moreover, no Torts Claim Notice was ever served upon Defendant Ritondale at any time, and as such, Plaintiff's state law claims must fail as a matter of law. Additionally, Plaintiff's federal claims are also barred by the applicable two-year statute of limitations and by the grand jury's probable cause determination.

With respect to the claims against Defendant Officer Bernhard and Sergeant Christopher Sanchez, those claims are barred because there were no Torts Claim Notices served on either of those officers. In addition, these officers were merely responding to a complaint of an unwanted female party by a citizen ( codefendant Groezinger). Groezinger feared for her safety as she has a FRO against Plaintiff and has a confidential address for domestic violence victims. The attorney listed on the paperwork is Kenneth Rossellini (who is also referenced in the process server's certification). Rossellini was suspended from the practice of law by Order of Chief Judge Bumb and this Court removed him as counsel of record (ECF Text Order 10 dated September 8, 2025). The officers responded to the call, ran the license plate and found no violation of the FRO. No summons was issued, and Plaintiff was not involved whatsoever with this incident. Furthermore, the process server's affidavit should not be considered as it involved Rossellini, a suspended attorney who was ordered to be removed from this case. The police report from the incident reflects that. Therefore, Plaintiff's claims against these Waldwick defendants have no merit and he should not be permitted to file the SAC against any of the Waldwick Defendants.

### B. <u>Claims Against the Oakland Defendants</u>

Similarly, even though the SAC fails to make allegations against Defendants Harvey, Lopez or Anderson, specifically, the only involvement that the Oakland

Defendants had with Plaintiff occurred during a single incident in June of 2025.

Plaintiff's SAC alleges that, during a custodial exchange at the Oakland Municipal Court parking lot on June 5, 2025, Defendant Groezinger reported to the Oakland Police Department that Plaintiff or the vehicle transporting the child was without a proper car/booster seat. (SAC at ¶ 92-93). Plaintiff argues that Defendants "could not verify whether there was or was not a booster seat in the vehicle." (SAC at ¶ 96). Upon their inability to "verify the car-seat allegations", Plaintiff claims that the named officers continued to detain him on the basis of "a possible final-retraining-order violation. . ." (SAC at ¶ 98).

Plaintiff's SAC claims that Defendant Harvey "was the supervising office on scene and directed, approved, or failed to stop the continued detention after the alleged car-seat violation could not be verified." (SAC at ¶ 199). As for Officers Lopez and Anderson, Plaintiff claims that both "participated in the encounter, questioning, investigation, continued detention, or threat of enforcement." (SAC at ¶ 199). The Oakland Defendants' involvement was limited to these allegations on June 5, 2025, which occurred in the parking lot of the Oakland Municipal Court. The basis for the encounter is documented by a police report (Exhibits "D" and "E"). Notably, Plaintiff was not arrested at this time, no summons was issued against him, and the Oakland Defendants had no further or continued contact or involvement with Plaintiff.

The Oakland Defendants were merely acting in response to a report made by codefendant Groezinger and based upon the FRO that was issued against Plaintiff as well as the fact that a car seat was not utilized during the custodial exchange (Exhibit "D". None of the Oakland officers violated any of Plaintiff's rights. For the reasons set forth further below, Plaintiff should not be permitted to name Defendants Borough of Oakland, Donald Harvey, Matthew Lopez and/or Hank Anderson via the SAC as a matter of law.

## LEGAL ARGUMENT

### I. PLAINTIFF'S CLAIMS AGAINST THE WALDWICK DEFENDANTS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

Two of the three alleged incidents in Plaintiff's Second Amended Complaint that involve the Waldwick Defendants are time-barred as they occurred in 2019 and 2020. Pursuant to N.J.S.A. 2A:14, every action at law for any tortious injury to the rights of another are governed by a two year statute of limitations. With respect to an alleged incident in December of 2019, Plaintiff claims that co-defendant Gurney sought an OPRA request from the Waldwick Police Department. As per Plaintiff, Chief Messner improperly had telephone correspondence with co-defendant Gurney prior to the submission of this OPRA request. Additionally, Plaintiff claims that Chief Messner and the Waldwick Police Department unlawfully released records that should have been made confidential.

As for the April 2020 incident, Plaintiff claims that Officer Ritondale improperly sought an affidavit of probable cause, at least in part due to the allegation that Plaintiff threatened to burn down the residence, which Plaintiff submits was not in the recording from which Officer Ritondale based his affidavit.

Plaintiff also alleges violations of his civil rights. Actions filed under 42 U.S.C. § 1983 are governed by the limitations periods applicable to the state's personal injury claims. "Every § 1983 claim is subject to the statute of limitations applicable to personal injury claims in the state where the cause of action arose." Heyert v. Taddese, 431 N.J. Super. 388, 435 (App. Div. 2013). N.J.S.A. 2A:14-2 requires a personal-injury plaintiff to file suit within two years from the accrual of the cause of action. Ibid. Although state law determines the limitations period, federal law governs the accrual of a §1983 action. Ibid. Generally, "a § 1983 cause of action begins to accrue when the plaintiff knows, or has reason to know, of the injury on which the action is based." Ibid.; see also 3085 Kennedy Realty Co. v. Tax Assessor of Jersey City, 287 N.J. Super. 318, 323-324 (App. Div. 1996) (§ 1983 claim accrues when a plaintiff knows or should know about a violation of his or her constitutional rights). As such, any claims for alleged civil rights violations may only be predicated on conduct on or after June 15, 2023, which was two years prior to the filing of Plaintiff's Complaint. Thus, any alleged conduct having occurred prior to June 25,

2023 is irrelevant and cannot be the basis for Plaintiffs' state claims or federal civil rights claims as a matter of law.

## II. PLAINTIFF'S COMPLAINTS AGAINST DEFENDANTS ARE BARRED BY THE NOTICE PROVISION OF THE TORTS CLAIM ACT.

Due to Plaintiff's failure to comply with the New Jersey Torts Claim, any claims that he raises against any of the Oakland Defendants or the Waldwick Defendants via the SAC are not viable as a matter of law. N.J.S.A. 59:8-3 provides that: "[n]o action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." Accordingly, Plaintiff's Notice of Claim was to have been filed within the 90-day period as provided in N.J.S.A. 59:8-8, which holds "[a] claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided in this chapter not later than the ninetieth day after accrual of the cause of action."

The purpose of the notice requirements was outlined by the New Jersey Supreme Court in the case of Velez v. City of Jersey City, 180 N.J. 284 (2004);

> The purposes of the notice requirements are:
>
> (1) to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of a suit; (2) to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense; (3) to afford the public entity a chance

> to correct the conditions or practices which gave rise to the claim; and (4) to inform the State in advance as to the indebtedness or liability that it may be expected to meet.
>
> [Velez v. City of Jersey City, 180 N.J. 284, 290 (2004)].

The New Jersey Tort Claims Act contains a strict statute of limitations provision expressly mandating that no suit shall be brought against a public entity or public employee unless a claimant has furnished the appropriate public entity with notification of the claim. As such, N.J.S.A. 59:8-4 requires claimants to submit specific information to the public entity, including, but not limited to, "[t]he date, place, and other circumstances of the occurrence or transaction which gave rise to the claim asserted." See N.J.S.A. 59:8-4(c). In addition to the specific information required for submission to the public entity by the claimant, N.J.S.A. 59:8-8(a) provides that:

> The claimant shall be forever barred from recovering against a public entity or public employee, if:
>
> (a) He failed to file his claim with the public entity within 90 days of accrual of his claim except as otherwise provided in section 59:8-9…
>
> [N.J.S.A. 59:8-8(a)].

Failure to satisfy the ninety (90) daytime requirement of N.J.S.A. 59:8-8 constitutes an absolute bar to recovery against an entity or individual being sued pursuant to a claim under Title 59. See Karczewski v. Nowicki, 188 N.J. Super. 355,

357 (App. Div. 1982); see also Port of Monmouth Development v. Middletown, 229 N.J. Super. 445, 451-452 (App. Div. 1988), certif. den., 115 N.J. 59 (1989).

Regardless of whether alleged tortious conduct by a public employee arose out of a want of due care or an intentional act, when the public employee committed the conduct within the scope of his employment, compliance with the notice provisions of the New Jersey Tort Claims Act is strictly required. Stoeckel v. Township of Knowlton, 387 N.J. Super. 1, 22 (App. Div. 2006). The notice provisions of the Tort Claims Act are applicable to intentional torts, including where the alleged tort is entirely due to actual fraud, actual malice, willful misconduct, or an intentional wrong. Owens v. Fergin, 394 N.J. Super. 85, 92 (App. Div. 2007).

In the case at bar, Plaintiff filed a Torts Claim Notice on March 5, 2020. The Torts Claim notice was only served upon the Borough of Waldwick and asserts that the claim stems from an incident involving Claimant's privacy rights regarding the release of records under OPRA. Pursuant to the Torts Claim Act, Plaintiff's Complaint should have been filed within two (2) years of the incident. However, since Plaintiff's Complaint was not filed until June 25, 2025, all state law claims are untimely and cannot be set forth in the SAC.

Additionally, Plaintiff failed to file any other Torts Claim Notice against the other Waldwick Defendants (i.e. Chief Messner, Officer Ritondale, and/or Sergeant Sanchez) and/or the Oakland Defendants. Without complying with the Torts Claim

Act, Plaintiff cannot proceed with any state law torts against either the Borough of Waldwick or the Borough of Oakland and/or any of their respective employees as a matter of law. Therefore, the Court should not permit the SAC to name the Waldwick Defendants or the Oakland Defendants.

## III. THE SAC FAILS TO STATE A § 1983 CLAIM FOR SUPERVISORY LIABILITY AGAINST CHIEF MESSNER

Count I of Plaintiff's Second Amended Complaint alleges that former Chief of Police, Mark Messner, in his individual capacity "unlawfully obtained or improperly disseminated sensitive records." (SAC at ¶ 304). Plaintiff claims that Chief Messner's alleged conduct violated his constitutional rights. However, Plaintiff's claim fails because the SAC fails to plausibly allege that Chief Messner personally "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010) (quoting A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)). In order for liability to attach to a § 1983 claim, the defendant must have personal involvement in the alleged wrongdoing. Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

Here, the SAC claims that Chief Messner somehow approved of or facilitated the release of records after having allegedly communicated with another co-

defendant. These allegations are bare legal conclusions without sufficient facts to support same. For example, the SAC does not identify what Chief Messner said, wrote, or knew, or that he took any specific action, or, most importantly, how any conduct by Chief Messner resulted in any constitutional injury to Plaintiff. Quite simply, Plaintiff's SAC provides no nexus to connect facts to Chief Messner that resulted in any specific unconstitutional act. Given that Plaintiff's SAC merely relies upon the unsubstantiated assertion that Chief Messner "approved" or "authorized" the improper release of sensitive records, Plaintiff has failed to plea a sufficient basis for supervisory liability. Therefore, Plaintiff should not be permitted leave to file Count I of the SAC.

## IV. THE SAC FAILS TO STATE § 1983 CLAIMS AGAINST OAKLAND'S OFFICERS HARVEY, LOPEZ, AND ANDERSON

Counts III and IV of Plaintiff's Second Amended Complaint allege that Oakland's Officers- Harvey, Lopez, and Anderson- violated his First and Fourth Amendment rights during a custody exchange that occurred on June 5, 2025 at the Oakland Police station. Specifically, the SAC alleges that these officers unlawfully detained Plaintiff, threatened to arrest him for recording, which was in violation of an existing Final Restraining Order ("FRO"), and improperly shifted the basis for the encounter after the officers were unable to verify an alleged car-seat violation.

**A. Plaintiff Does Not Sufficiently Allege Personal Involvement to Bring These Claims Against Officers Harvey. Lopez, and Anderson**

For federal civil rights claims, it is well-established that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). This requirement has been applied to civil rights claim under the NJCRA, because, in interpreting the NJCRA, New Jersey courts look to federal cases analyzing Section 1983. See Tumpson v. Farina, 95 A.3d 210, 223 (N.J. 2014) ("Section 1983 may provide guidance in no different from a suit against the State itself.") Ibid.

Thus, in any civil rights action, a plaintiff must establish the defendant had "personal involvement in the alleged wrongs[.]" Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). The allegations concerning alleged personal involvement "must be made with appropriate particularity." Rode, *supra*, 845 F.2d at 1207-1208. Indeed, courts "need not credit a complaint's bald assertions or legal conclusion[s]." In re Burlington Coat Factory Securities Litig., 114 F.3d 1410, 1429 (3d Cir. 1997).

Critically, absent from the SAC are alleged facts establishing that any individual of the individual officers personally participated in constitutional violations, that Chief Messner directed or acquiesced in wrongdoing, and/or that either of the Boroughs maintained unconstitutional practices, policies, or customs. *See* Santiago v. Warminster Twp., 629 F. 3d 121, 125(3d Cir. 2010). Instead,

Plaintiff's SAC relies on bare legal conclusions, attenuated allegations of vicarious liability, and attempts to impose liability on municipalities for the acts of their employees without alleging a moving force. *See* Santiago v. Warminster Twp., 629 F. 3d 121, 125(3d Cir. 2010). While specific factual content is required, the SAC only offers formulaic recitations which are disconnected from the individually named defendants. *See* Santiago v. Warminster Twp., 629 F. 3d 121, 125(3d Cir. 2010). Because the SAC fails to establish sufficient factual matter, even if those facts were accepted as true, to state any claims to relief that are plausible on their faces, dismissal is warranted. Burtch v. Milberg Factors, Inc., 662 F.3D 212, 221 (3d Cir. 2011)

Here, Plaintiff has insufficiently claimed that the Oakland Officers had personal involvement in the alleged wrongdoing. Therefore, the claims against Officers Harvey, Lopez, and Anderson should not be permissible via the SAC.

**B. Qualified Immunity Bars Claims Where Plaintiff Has Not Plausibly Alleged a Clearly Established Right**

Assuming arguendo, Plaintiff's claims do not fail based on the Torts Claim Act and the applicable statute of limitations, the actions of all police defendants are immune from suit based on the doctrine of qualified immunity. It is well-settled that "[g]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1981). Qualified immunity applies to government officials who perform their duties reasonably, "...regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Ibid. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

The function of qualified immunity is to immunize government officials from suits and not merely provide a defense from liability. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). On the other hand, "if the law [violated] was clearly established, the immunity defense ordinarily should fail, since a reasonably competent official should know the law governing his conduct." Harlow v. Fitzgerald, 457 U.S. 800, 818-819 (1981). Qualified immunity is an affirmative defense under the New Jersey Civil Rights Act. Ramos v. Flowers, 429 N.J. Super. 13, 19 (App. Div. 2012).

In determining whether qualified immunity applies, the Court must determine (1) whether in viewing the facts in a light most favorable to Plaintiff that defendant violated a constitutional right; and (2) whether the constitutional right was clearly established at the time of the alleged violation. Pearson v. Callahan, 555 U.S. 223, 232 (2009). "In other words, '[q]ualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.'" Ramos v.

Flowers, 429 N.J. Super. 13, 28 (App. Div. 2012) (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

The Court may consider either step of the analysis first. Pearson, *supra*, 555 U.S. at 236. Courts consider qualified immunity "…at the earliest stage of proceedings, apart from analysis of the underlying claim itself." Giles v. Kearney, 571 F.3d 318, 325-326 (3d Cir. 2009). Therefore, Plaintiff should not be permitted leave to file the SAC.

In analyzing the second prong of the qualified immunity analysis, a right is clearly established only if "every reasonable official would have understood that what he was doing violates the right." Zaloga v. Borough of Moosic, 841 F.3d 170, 175 (3d Cir. 2016). The inquiry as to whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a general proposition." Brosseau v. Haugen, 543 U.S. 194, 198 (2004). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" Mullenix v. Luna, 578 U.S. 7, 12 (2015) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011) (emphasis in original). "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" Kisela v. Hughes, 584 U.S. 100, 105 (2018) (quoting Plumhoff v. Rickard, 572 U.S. 765, 778-779 (2014)).

"As for timing, the Supreme Court has repeatedly stressed the importance of resolving qualified immunity 'at the earliest possible stage in litigation.'" Stringer v. Cnty. of Bucks, 141 F.4th 76, 85 (3d Cir. 2025) (quoting Pearson, *supra*, 555 U.S. at 232 (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (*per curiam*)).

Here, the actions taken by the Waldwick and Oakland Defendants are protected by qualified immunity. The SAC alleges that the officers detained Plaintiff for a custody exchange, at which time they were investigating an alleged car-seat violation, and, thereafter, a provision of a FRO regarding recording. Accepting Plaintiff's allegations as true, Plaintiff has not plausibly alleged any violations of any clearly established laws. Plaintiff's SAC fails to cite to any controlling authority that would support his conclusion that a brief investigation based upon a child-restraint violation and/or inquiry into compliance with an FRO is unconstitutional under the circumstances alleged. Therefore, the Court should not permit Plaintiff to plea any claims that are protected by qualified immunity.

**C. The SAC Does Not Plausibly Allege Unreasonable Seizure**

To state a Fourth Amendment unlawful detention claim, Plaintiff must allege facts showing that the Oakland Defendants lacked reasonable suspicion or that the detention exceeded constitutional bounds. The SAC alleges that the Oakland Defendants approached Plaintiff after co-defendant Groezinger reported an alleged

car-seat issue, that the officers could not verify the allegation, and that the encounter lasted approximately 25 minutes.

Plaintiff's SAC does not allege facts showing that the initial approach or inquiry by the Oakland Defendants was unreasonable. A report of a child-safety violation provides a lawful basis for investigatory inquiry. The SAC's assertion that the Oakland Defendants "shifted" justification after failing to confirm the car seat is a legal conclusion, not a factual allegation of Fourth Amendment violation. Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011). The SAC does not allege that Plaintiff was handcuffed, threatened with force, transported, or subjected to anything beyond questioning during a public custody exchange. Allegations of a 25-minute encounter, without more, do not plausibly show unreasonable seizure. As such, this claim should not be permissible via the SAC.

### D. The SAC Does Not Plausibly Allege First Amendment Retaliation or Interference

Count III of Plaintiff's Second Amended Complaint alleges that the Oakland Defendants threatened Plaintiff with arrest for recording, which was in violation of an FRO. However, in order to state a viable First Amendment, claim for retaliation, Plaintiff must allege that he engaged in constitutionally protected activity, that the Oakland Defendants took adverse action, and that the protected conduct was a substantial motivating factor.

The SAC seems to claim that the recording that may have been taken during the custody exchange on June 5, 2025 was protected conduct. Plaintiff's SAC is unclear as to whether the recording, in fact, occurred and/or whether or how that conduct would have been protected activity. While the SAC alleges that the Oakland Defendants "threatened" arrest, it is undisputed that no arrest actually occurred. Quite simply, Plaintiff has failed to establish a viable claim that he suffered any concrete injury at the hands of the Oakland Defendants.

Here, Plaintiff's allegations merely establish a possibility of protected conduct based upon speculative harm, which is insufficient. Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011). The SAC does not identify what any of the Oakland Defendants said, to whom those statements were made, and/or provide a context to what the statements were. Without any factual allegations that either Officer Harvey, Officer Lopez, or Officer Anderson personally made threats, which would deter a person of ordinary firmness from continuing to engage in a protected activity, a claim for First Amendment Retaliation is not viable.

## V. THE SAC FAILS TO STATE A CLAIM AGAINST OFFICER RITONDALE FOR MALICIOUS PROSECUTION

Count II of Plaintiff's Second Amended Complaint raises a Fourth Amendment claim for Malicious Prosecution as against Officer Ritondale, allegedly for his role in initiating the probable-cause affidavit in response to a domestic

violence complaint on April 17, 2020. Specifically, Plaintiff alleges that Officer Ritondale improperly relied upon a statement that Plaintiff threatened to "'burn the residence down' or cause harm." (SAC at ¶ 243-¶ 244), which Plaintiff claims is not supported by the recording in question.

In order to establish a malicious prosecution claim pursuant to § 1983, Plaintiff must allege that Officer Ritondale: (1) initiated a criminal proceeding; (2) the criminal [proceeding ended in [Plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)). While the SAC alleges that there was a favorable termination in Plaintiff's favor, it fails to plausibly allege that Officer Ritondale, personally, initiated or caused the continuation of criminal charges. It is unclear whether prosecutorial decision-makers were involved in the initiation or continuation of these charges.

Officer Ritondale signed documents to initiate the probable cause affidavit, but beyond that, Officer Ritondale was not involved in the prosecution of those charges, including but not limited to presenting the case before a grand jury. Prosecutorial discretion dictates whether the prosecutor decides to pursue a charge.

While a prosecutor's decision to pursue a charge and/or proceed to trial or a grand jury's decision to indict a defendant does not shield a police officer from liability if and when that officer deliberately provides misleading information that resulted in those decisions being made, Plaintiff must establish that the officer's conduct actually caused the initiation or continuation of the proceedings. Santiago v. Warminster Twp., 629 F. 3d 121, 125 (3d Cir. 2010).

Plaintiff's allegations against Officer Ritondale are based on conclusory allegations. Plaintiff conclusory alleges that his prosecution "lacked probable cause", and that the "prosecution was based on malice". These vague and conclusory allegations are insufficient to establish a *prima facie* claim against Officer Ritondale.

Here, Plaintiff's SAC does not allege facts to establish that Officer Ritondale, rather than the prosecutor and/or grand jury, decided to pursue the prosecution related to the April 17, 2020 incident. Plaintiff's SAC claims that Officer Ritondale prepared the probable-cause affidavit. However, prosecutorial review and/or external decisions to pursue this charge break the causal chain attributing any malicious prosecution to Officer Ritondale, unless Plaintiff can establish that he somehow knowingly misled the prosecutor in the pursuit of baseless charges. Plaintiff's SAC does not satisfy this standard, and thus, this claim should not be permitted to be raised in the SAC as a matter of law.

## VI. THE SAC FAILS TO STATE § 1983 CLAIMS AGAINST OFFICERS BERNHARD AND SANCHEZ FOR SERVICE-OF-PROCESS INTERFERENCE

Turning to Count IX of Plaintiff's Second Amended Complaint, that count alleges that Officer Bernhard and Sergeant Sanchez interfered with lawful service-of-process attempts by contacting Plaintiff's process server and instructing her not to return to co-defendant Groezinger's residence. Additionally, Plaintiff claims that Officer Bernhard and Sergeant Sanchez improperly used law-enforcement methods to obtain vehicle-registration information on Plaintiff's process server. In effect, Plaintiff claims that these actions by Officer Bernhard and Sergeant Sanchez served to burden his access to the courts and his rights to pursue his federal litigation. However, Plaintiff's claim fails for several reasons as further set forth below.

First, the SAC does not claim that service was ultimately prevented and/or that Plaintiff actually suffered any concrete injury relative to federal litigation. Instead, the SAC establishes that service on other defendants was successful. Plaintiff does not allege that he was unable to effectuate service on co-defendant Groezinger via alternative means.

Second, Officer Bernhard and Sergeant Sanchez are protected by the fact that a police response to a report of trespass, even if that report is deemed to be mistaken, does not amount to interference with constitutional rights absent some showing of bad faith, harassment, or other conduct undertaken to obstruct federal proceedings.

In fact, per the SAC, Sergeant Sanchez referred to this matter as a simple "misunderstanding." The underlying allegations of trespass were responded to as a routine police inquiry. That police action does not establish retaliation or deliberate interference with federal litigation. Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011).

Third, the SAC fails to allege that, at the time of the initial conduct, either Officer Bernhard or Sergeant Sanchez was aware of the fact that the process server was attempting to effectuate service with respect to a pending federal civil-rights lawsuit. Further, the SAC does not allege that the officers' conduct was motivated by the substance of the lawsuit. In the absence of factual allegations that tie the officers' conduct to either a retaliatory or obstructive intent, Plaintiff's claim for interference of service-of-process is speculative at best. Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011). Therefore, Plaintiff should not be granted leave to file the SAC.

## VII. THE SAC FAILS TO STATE *MONELL* CLAIMS AGAINST THE BOROUGH OF WALDWICK AND THE BOROUGH OF OAKLAND

Count V of Plaintiff's Second Amended Complaint claims *Monell* liability against the municipalities of Waldwick and Oakland allegedly due to their policies, customs, practice, and/or failure to train. However, municipalities may not be held liable under §1983 based upon the theory of *respondeat superior*. Santiago v.

Warminster Twp., 629 F. 3d 121, 125 (3d Cir. 2010). Instead, to establish a *Monell* claim, a plaintiff must allege that a municipal policy, custom, or failure to train was the moving force behind a constitutional violation. Santiago v. Warminster Twp., 629 F. 3d 121, 125 (3d Cir. 2010).

The SAC alleges that Waldwick "failed to maintain adequate policies, training, and supervision regarding the release of sensitive domestic-violence, victim-related, juvenile, or law-enforcement records" and "permitted sensitive records to be released through law-enforcement relationships or informal channels." These allegations amount to legal conclusions, which are unsupported by the actual factual allegations set forth in the SAC. Indeed, nowhere in the SAC does it identify any specific policy, training, or custom that was supposedly deficient. Plaintiff has not alleged that Waldwick had noticed a pattern of misconduct, that any one policymaker made a deliberate choice that affected Plaintiff, or that the alleged injury resulted from anything other than isolated acts made by individual employees.

Similarly, with respect to Oakland, the SAC alleges that Oakland "failed to train or supervise officers regarding verification of custody-dispute accusations" and "permitted officers to rely on unverified allegations." As with the allegations against Waldwick, these allegations are bare assertions of municipal fault that lack factual content. Santiago v. Warminster Twp., 629 F. 3d 121, 125 (3d Cir. 2010). An isolated event, even if it does result in a constitutional error, does not support the

inference that a municipality had inadequate training or customs unless the plaintiff can establish extraordinary circumstances, which are not alleged under these facts and circumstances. Due to the fact that the SAC does not establish that a municipal policy or custom was the driving force behind any constitutional violation, Plaintiff's *Monell* claims against Oakland should not be permitted.

## VIII. STATE LAW CLAIMS UNDER THE NEW JERSEY CIVIL RIGHTS ACT FAIL

Counts I, II, VII, and IX raise claims based upon the New Jersey Civil Rights Act ("NJCRA") as codified as N.J.S.A. 10:6-2(c). In order to raise a viable cause of action under the NJ CRA, the claim "only may be pursued against persons acting under color of law." Perez v. Zagami, LLC, 218 N.J. 202, 204 (2014). "NJCRA permits an individual to bring a civil action when their exercise of a constitutional right has been 'interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law . . ." Chalet v. State, 2022 N.J. Super. Unpub. LEXIS 1961, *8 (2022) (quoting N.J.S.A. 10:6-2(c)).

The NJCRA is modeled after the Federal Civil Rights Act, 42 U.S.C.S. §1983, and serves as New Jersey's state-law analogue to a 42 U.S.C.S. §1983 action. Morillo v. Torres, 222 N.J. 104, 107-108 (2015); see also Chalet v. State, 2022 N.J. Super. Unpub. LEXIS 1961, *8 (2022) (citing Perez v. Zagami, LLC, 218 N.J. 202, 212 (2014)). "'Given their similarity, our courts apply [Section] 1983 immunity doctrines to arising claims under [NJCRA].'" Uneze v. Greystone Park Psychiatric

Hosp., 2022 N.J. Super. Unpub. LEXIS 394, *19 (2022) (quoting Brown v. State, 442 N.J. Super. 406, 425, (App. Div. 2015), rev'd on other grounds, 230 N.J. 84 (2017); see also Gormley v. Wood-El, 218 N.J. 72, 113-115 (2014)); see also Chalet v. State, 2022 N.J. Super. Unpub. LEXIS 1961, *8 (2022) (internal citations and quotations omitted).

Notably, "[t]he doctrine of qualified immunity shields law enforcement officers from personal liability for civil rights violations when the officers are acting under color of law in the performance of official duties." Morillo v. Torres, 222 N.J. 104, 107 (2015).

> As both federal and state case law on this immunity doctrine recognize, members of law enforcement must be permitted to perform their duties without being encumbered by the specter of being sued personally for damages, unless their performance is not objectively reasonable. Thus, the defense's protection is denied only to officers who are plainly incompetent in the performance of their duties or who knowingly violate the law.
>
> [Morillo v. Torres, 222 N.J. 104, 108 (2015)].

Here, in light of the fact that the federal claims set forth by the SAC are deficient for the reasons previously articulated, the parallel NJ CRA claims are also nonviable. Specifically, police officers "may be shielded from liability for civil damages in a civil rights suit if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'"

Ramos v. Flowers, 429 N.J. Super. 13, 26 (App. Div. 2012) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Orsatti v. N.J. State Police, 71 F.3d 480,483 (3d Cir. 1995)). Given the deficiencies of Plaintiff's claims under the NJ CRA, those claims should not be permitted in the SAC.

## IX. TO THE EXTENT THE SAC SEEKS PUNITIVE DAMAGES AGAINST MUNICIPAL DEFENDANTS OR DAMAGES BARRED BY IMMUNITY, THOSE CLAIMS MUST BE DISMISSED

Plaintiff's proposed Second Amended Complaint seeks punitive damages. However, punitive damages are not recoverable as against municipalities either under §1983 or the NJCRA because public entities are immune from punitive damages under New Jersey Law. Haas v. N.J. Pinelands Com, 227 N.J. Super. 313, 322 (Ch. Div. 1988) (citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981)). As such, to the extent that the SAC seeks punitive damages against either the Borough of Waldwick or the Borough of Oakland, that relief is not available to Plaintiff and should not be allowed via the SAC.

## X. PLAINTIFF CANNOT ESTABLISH A CONSPIRACY CLAIM AGAINST ANY OF THE POLICE DEFENDANTS

Plaintiff alleges a conspiracy between multiple defendants without any factual basis to support this claim. To state a valid conspiracy claim under § 1983, a plaintiff must plead facts plausibly showing an agreement or understanding between the defendants to deprive the plaintiff of a constitutional right, along with concerted

action taken in furtherance of that agreement. See Great W. Mining and Mineral Co. v. Fox Rothschild LLP, 615 F. 3d 159, 176-177 (3d. Cir. 2010). Baseless assertions that defendants "acted in concert," without factual support, are insufficient. Ibid.; see also Capogrosso v. Supreme Court of N.J., 588 F. 3d 180, 184-185 (3d Cir. 2009). Here, the Second Amended Complaint fails to set forth any agreement, communication or coordinated conduct involving any of the Oakland or Waldwick Defendants and Plaintiff's Motion to File an Amended Complaint should be denied with prejudice.

## XI. STANDARD OF REVIEW

This motion is governed by Fed. R. Civ. P. 15(a)(2). A. Rule 15(a)(2) Pursuant to Rule 15(a)(2), leave to amend the pleadings is generally granted freely. See Foman v. Davis, 371 U.S. 178, 182 (1962); Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." Id. However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004). In deciding whether to grant leave to amend, "prejudice to the non-moving party is the touchstone for the

denial of the amendment." Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989) (quoting Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978)). To establish prejudice, the non-moving party must make a showing that allowing the amended pleading would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction. See Long, 393 F.3d at 400. Delay alone, however, does not justify denying a motion to amend. See Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 8 2001). Rather, it is only where delay becomes " 'undue,' placing an unwarranted burden on the court, or ... 'prejudicial,' placing an unfair burden on the opposing party" that denial of a motion to amend is appropriate. Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984).

## CONCLUSION

For the foregoing reasons, the Waldwick Defendants and the Oakland Defendants submit that Plaintiff has not adequately pled sufficient facts establishing the causes of action set forth in his Second Amended Complaint. Because that Second Amended Complaint fails to satisfy the initial legal hurdle of stating a claim for which relief may be granted, Defendants respectfully request that the Court deny Plaintiff's Motion to Amend the Complaint in its entirety.

**PFUND MCDONNELL & SHEPARD, P.C.**
*Attorneys for Defendants, Chief Mark Messner, Dylan Ritondale, Borough of Waldwick, Borough of Oakland, Donald Harvey, Matthew Lopez, Hank Anderson, Officer Bernhard, and Sergeant Christopher Sanchez*

Mary McDonnell

**MARY C. MCDONNELL, ESQ.**

Dated: September 21, 2026